Fifth Division

March 31, 1999

1-98-0920

HIRAM CRAWFORD, JR., 
et
 
al
., ) 

) Appeal from the 

Plaintiffs-Appellants, ) Circuit Court of

                    ) Cook County.

v. ) 

)

CITY OF CHICAGO, ) 

) 

Defendant-Appellee, ) 

) 

and )

)

CHERYL TADIN, SANDRA KING, and          ) Honorable 

JARED GULIAN, ) Thomas Durkin,

) Judge Presiding.

Intervenors/Defendants-Appellees. )

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Hiram Crawford, Jr., John Tyler, Willie Lewis, 

Lucius Taylor and Hiram Crawford, Sr. (collectively plaintiffs), appeal from the circuit court's order granting summary judgment (735 ILCS 5/2-1005 (West 1996) (section 2-1005)) to defendant city of Chicago (City) and intervenors/defendants Cheryl Tadin, Sandra King and Jared Gulian (collectively Intervenors), and denying summary judgment to plaintiffs, based on its finding that the City had authority under its home rule power to adopt its domestic partnership ordinance (Chicago Municipal Code §2-152-072 (eff. May 16, 1997) (hereinafter DPO)).  Plaintiffs present as issues whether 
(1) the court erred in dismissing as premature plaintiffs' claims that non-health benefits were available under the DPO; 
(2) the court erred in finding home rule authority for the City to adopt the DPO; and (3) assuming such authority, whether it has been limited either (a) by preemption by the State or (b) because the DPO legislates in an area of statewide concern. 

On March 19, 1997, the Chicago City Council adopted the DPO (see Chicago City Council, Journal of the Proceedings of the City Council, March 19, 1997, at 40852) which makes available employee benefits to unmarried, same-sex partners of City employees.
(footnote: 1)   Pursuant to the DPO, the City offered health, dental and vision insurance benefits, at favorable rates, to domestic partners of City employees.  The City also offered contributory group long term disability insurance.  To the date of judgment, only nineteen individuals had been certified as meeting the eligibility standards for domestic partnership under the ordinance.  

On May 7, 1997, plaintiffs, as Chicago citizens and taxpayers, sought declaratory (735 ILCS 5/2-701 (West 1996) (section 2-701)) and injunctive relief (735 ILCS 5/11-101, 
et
 
seq
. (West 1996)) in challenging the adoption and anticipated implementation of the DPO, and the related expenditure of tax dollars, alleging that the City lacked home rule authority to adopt such an ordinance, and moved for a temporary restraining order seeking to prevent the City from implementing the ordinance on its effective date.  On May 12, 1997, the circuit court denied  the motion and granted City employees who have obtained or wish to obtain benefits for their qualified domestic partners, leave to intervene.  The City and the Intervenors subsequently filed motions to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)).  Plaintiffs thereafter sought a preliminary injunction, which the circuit court denied, as well as the City's and the Intervenors' motions to dismiss, on September 16, 1997.  

The City, the Intervenors and plaintiffs later filed motions for summary judgment, raising as three principal issues whether:  (1) the City lacked the authority to adopt the DPO; (2) the DPO is against public policy; and (3) the DPO's application to benefits other than health insurance is ripe for adjudication.  On February 10, 1998, the circuit court granted the City's and the Intervenors' motions for summary judgment and denied that of plaintiffs.  In upholding the ordinance, the court found the employee benefits the City provides for its employees is a matter of local concern for purposes of home rule authority; public policy in Illinois did not require the complete denial of health benefits to members of same-

sex relationships; and the question of whether the ordinance also applied to benefits other than health insurance was not ripe for adjudication.  Plaintiffs appeal.  

I

The scope of the DPO first will be considered in the context of plaintiffs' contention that the circuit court erred when it ruled on the issue of ripeness for adjudication as to non-health insurance benefits.  The City and Intervenors submit that only health, vision and dental insurance benefits are presently being offered to qualified domestic partners.  The City also asserts that plaintiffs lack standing.
 The applicable portion of the ordinance provides:

"A qualified domestic partner, as defined in this section, of an individual employed by the city of Chicago shall be eligible for the same benefits, including but not limited to health coverage, as are available to the spouse of an individual employed by the city of Chicago."  Chicago Municipal Code §2-152-072 (eff. May 16, 1997).  

Illinois courts may rule upon actual controversies only and are prohibited from entering judgments or orders which do not terminate the controversy, or some part thereof, giving rise to the proceeding.  Section 2-701(a); 
Big River Zinc Corp. v. Illinois Commerce Comm'n
, 232 Ill. App. 3d 34, 38, 597 N.E.2d 256 (1992).  The rationale of this "ripeness" doctrine is to prevent courts from entangling themselves in abstract disagreements and premature adjudications of administrative policies, and to protect agencies from judicial interference until an administrative decision has been formalized and its effects concretely asserted by the challenging parties.  
Bio-Medical Laboratories, Inc. v. Trainor
, 68 Ill. 2d 540, 546, 370 N.E.2d 223 (1977), citing and quoting from 
Abbott Laboratories v. Gardner
, 387 U.S. 136, 148-49, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967).  When evaluating whether a challenge to an administrative agency's decision should be dismissed on grounds of ripeness, courts consider fitness of the issues for judicial decision and the hardship to the parties if court consideration is withheld.  
Big River Zinc Corp.
, 232 Ill. App. 3d at 39.  A claim is considered unripe when critical elements are contingent or unknown.  
Marusic Liquors, Inc. v. Richard M. Daley
, 55 F.3d 258, 260 (7th Cir. 1995).

Plaintiffs posit that the ordinance grants domestic partners a complete list of benefits based on ordinance language that they shall receive "the same benefits, including but not limited to health coverage, as are available to the spouse of an individual employed by the city of Chicago," arguing that such benefits would include workers' compensation, pension benefits, unemployment compensation and health, vision and dental insurance.  Plaintiffs assert that the Intervenors agree with their interpretation.

Plaintiffs allege further that the City has artificially created the ripeness issue with its arbitrary and narrow administrative interpretation of the ordinance, contradicting its clear wording and, by shrinking the scope of the ordinance, the City evades clear state preemption problems the ordinance has created under state law for workers' pensions and workers' compensation, for example.  Plaintiffs maintain that the circuit court's failure to render a comprehensive interpretation of the ordinance benefits makes it appropriate for this court to resolve the disputed interpretation of the ordinance under section 2-701.  

It should be observed at the outset that declaratory judgment actions also require an actual controversy to exist between the parties.  
Weber v. St. Paul Fire and Marine Insurance Co.
, 251 Ill. App. 3d 371, 372, 622 N.E.2d 66 (1993).  Underlying facts and issues may not be premature or moot, and courts will refrain from issuing advisory opinions or rendering guidance regarding future events.  
Kerr-McGee Chemical Corp. v. Department of Nuclear Safety
, 204 Ill. App. 3d 605, 610, 561 N.E.2d 1370 (1990).    

Construction of a statute requires identification of legislative intent and the effect it should be given.  
Glynn v. Retirement Board of Policemen's Annuity
, 263 Ill. App. 3d 590, 593, 635 N.E.2d 823 (1994).  Legislative intent is ascertained by examining the statute's language and considering each section in connection with every other section.  
Glynn
, 263 Ill. App. 3d at 593.  The most reliable indicator of legislative intent is the statute's language and, where it is clear and unambiguous, the plain and ordinary meaning of the words will be given effect.  
Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board
, 165 Ill. 2d 80, 87, 649 N.E.2d 369 (1995).  The rules which govern the construction of statutes are also applied in the construction of municipal ordinances.  
City of Chicago v. Pioneer Towing, Inc.
, 73 Ill. App. 3d 867, 870, 392 N.E.2d 132 (1979). 

The DPO language states that domestic partners are eligible for the same benefits as spouses of City employees beyond the range of health interests.   There is no showing, however, that tax funds have been or will be appropriated for such benefits or that they have been sought or received under the DPO.  Although it may be prophesied that the City may contemplate granting such benefits at some time in the future, it has not done so at the present time.

Plaintiffs claim that the breadth of the ordinance is not limited to health benefits because group disability insurance has been made available to qualified domestic partners at a discounted price, pension benefits available to spouses would "necessarily" be made available to them and the City's budget contains separate line items for both health and non-health benefits.  Each of these arguments is unavailing.  The record reveals that the City does not pay for group disability insurance, and there is no factual support that the budget contains appropriations for non-health benefits, including pensions, which specifically relate to qualified domestic partners.  

Accordingly, plaintiffs' apprehensions that non-health benefits may be provided at some unidentified future time are not ripe for adjudication, as the circuit court correctly ruled.

II    

Plaintiffs next contend that the circuit court erred when it granted the City’s and the Intervenors’ motions for summary judgment, and denied plaintiffs’ motion for summary judgment.  They assert that the City, in adopting the subject ordinance, allegedly acted 
beyond the scope of its home rule authority, which does not allow it to create a new marital status, domestic partnership, or  grant the same employee benefits, legal rights and privileges that the City gives to the married spouses of its employees.  They argue that only the State Legislature has the power to create and define categories of marital status for purposes of state law.  

Summary judgment is properly granted where the pleadings, depositions, admissions on file and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005 (West 1996); 
Mobil Oil Corp. v. Mayland Casualty Co.
, 288 Ill. App. 3d 743, 751, 681 N.E.2d 552 (1997); see 
Thompson v. Platt
, 116 Ill. App. 3d 662, 452 N.E.2d 733 (1983).  Since this is an appeal from an order granting summary judgment in which no testimony or credibility issues were presented to the circuit court, our review is 
de
 
novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992); 
Cincinnati Companies v. West American Insurance Co.
, 183 Ill. 2d 317, 323, 701 N.E.2d 499 (1998); 
Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.
, 285 Ill. App. 3d 201, 209, 673 N.E.2d 369 (1996)
, 
aff'd
, 181 Ill. 2d 214, 692 N.E.2d 269 (1998).

The powers of home rule municipalities such as Chicago are derived from the Illinois Constitution of 1970.  Ill. Const. 1970, art. VII, § 6(a) (section 6(a)).  Section 6(a) provides, in pertinent part:

"[A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."  Ill. Const. 1970, art. VII, § 6(a). 

Section 6(a) has been interpreted as having the intent that home rule units be given the broadest powers possible.  
Scadron v. City of Des Plaines
, 153 Ill. 2d 164, 174-75, 606 N.E.2d 1154 (1992) (
Scadron
), citing Ill. Ann. Stat., 1970 Const., art. VII, §6, Constitutional Commentary, at 24 (Smith-Hurd 1971); 
Congress Care Center Associates v. The Chicago Department of Health
, 260 Ill. App. 3d 586, 587, 632 N.E.2d 266 (1994) (
Congress Care
).  
Significantly, our Constitution provides that the "[p]owers and functions of home rule units shall be construed liberally."  Ill. Const. 1970, art. VII, §6(m).  The grant of home rule power is broad and "imprecise," which imposes upon the courts the duty of interpreting whether any power exercised by a home rule unit exceeds its constitutional limitations.   
Congress Care
, 260 Ill. App. 3d at 587-88; 
Josephine Kirwin v. The Peoples Gas Light and Coke Co.
, 173 Ill. App. 3d 699, 703, 528 N.E.2d 201 (1988).  Home rule units are empowered to carry on activities that relate to their communities notwithstanding the fact that the state also may be interested and active in regulating the same area (
Congress Care
, 260 Ill. App. 3d at 588), unless the State Legislature has exercised its power to regulate in a given area exclusively.  Ill. Const. 1970, art. VII, §§ 6(h), (i).

The precise question as to whether a municipality has the authority under its home rule powers to adopt legislation providing employee benefits to the domestic partners of its employees and whether that authority has been limited by the State in any way is one of first impression in Illinois.

The DPO adopted in the present case was designed to protect the health of the City's employees and their domestic partners.  Accordingly, the City had the power to enact the ordinance under section 6.  
Village of Bolingbrook v. Citizens Utilities Co. of Illinois
, 158 Ill. 2d 133, 136, 632 N.E.2d 1000 (1994) (
Village of Bolingbrook
).  Pursuant to section 6(i) of our Constitution, a home rule municipality's powers are preempted by the State under the following, very narrow, circumstances:

"Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."  Ill. Const. 1979, art. VII, §6(i).

Section 6(i) is intended to diminish the circumstances under which the powers of local home rule units are preempted by judicial interpretation of unexpressed legislative intent.  
Scadron
, 153 Ill. 2d at 186; 
Congress Care
, 260 Ill. App. 3d at 588; 
City of Chicago v. Roman
, 292 Ill. App. 3d 546, 551, 685 N.E.2d 967 (1997), 
aff'd
, 184 Ill. 2d 504, 705 N.E.2d 81 (1998) (
Roman
).  
The General Assembly can restrict the concurrent exercise of a home rule unit's power by enacting a law that specifically limits such power under section 6(i); unless a state law specifically states that a home rule unit's power is limited, however, the authority of a home rule unit to act concurrently with the state is not restricted.  
Village of Bolingbrook
, 158 Ill. 2d at 138; 
Scadron
, 153 Ill. 2d at 187-

188; 
Roman
, 292 Ill. App. 3d at 551.

Section 6(h) of our Constitution postulates, in relevant part, that "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit."  Ill. Const. 1970, art. VII, §6(h).  To meet the requirements of section 6(h), the legislation must contain express language that the area covered by the legislation is to be exclusively state controlled; it is not enough that the Legislature comprehensively regulates an area which otherwise would fall into home rule authority.  
Village of Bolingbrook
, 158 Ill. 2d at 138.  Absent such specificity, the courts will not find the preemption of a home rule unit's authority.  
Roman
, 292 Ill. App. 3d at 551, citing 
Town of Cicero v. LaFrancis
, 282 Ill. App. 3d 556, 558, 668 N.E.2d 164 (1996).  Concurrent exercises of power by the State and home rule units are favored in Illinois.  Reliance is placed upon the Legislature, rather than the courts, if there is an intended limit on the home rule unit's exercise of its authority.  
Scadron
, 153 Ill. 2d at 188; 
Congress Care
, 260 Ill. App. 3d at 588.

Here, plaintiffs insist that:  (1) marriage is the only marital status two people can share collectively under Illinois law; (2) the State Legislature has prescribed clear requirements two people must meet in order to be married, demonstrating its great interest in maintaining the institution of marriage; and (3) Illinois law promotes the public policy of supporting marriage by extending numerous legal privileges and rights to married spouses not granted to unmarried cohabitant partners, who have no collective marital status in this state.  Plaintiffs refer to repeated deference given by the courts to the Legislature’s determination that marriage is the only marital status two people can have collectively under state law, rejecting requests by unmarried cohabiting couples to have the courts declare that they have the same joint legal rights as married couples in Illinois.

Plaintiffs assert that the DPO mimics state law by defining eligibility standards to be met by a domestic partner, as well as the procedure for terminating a domestic partnership, just as state marital law does.  Relying on 
City of Carbondale v. Yehling
, 96 Ill. 2d 495, 451 N.E.2d 837 (1983), plaintiffs point out that the Committee on Local Government of the constitutional convention essentially stated that home rule cities would not have the power to define marital status under law when it stated that home rule units possessed no power over divorce, among other things.  Accordingly, plaintiffs assert that any benefits the City grants to domestic partners of City employees based on its creation of a "same-sex common law marriage" are null and void, because the ordinance violates state law and state public policy.  

The foregoing array of plaintiffs' assertions subsumes the proposition that the City has created a new "marital" status by adoption of the DPO.  The term "marital" has been defined as "[r]elating to, or connected with, the status of marriage ***," Black's Law Dictionary, p. 967 (6th Ed. 1990); "of or relating to marriage or the marriage state ***."  Webster's Third New International Dictionary, p. 1382 (1993).  The term "marriage" is defined as "[the] [l]egal union of one man and one woman as husband and wife ***."  Black's Law Dictionary, p. 972 (6th Ed. 1990); "the state of being united to a person of the opposite sex as husband or wife ***."  Webster's Third New International Dictionary, p. 1384 (1993).  Nothing in the DPO purports to create a marital status or marriage as those terms are commonly defined.  Rather, the DPO addresses only health benefits extended to City employees and those residing with them.  See 
Funderburke v. Uniondale Union Free School District No. 15
, 676 N.Y.S.2d 199 (1998).  The circumstances presented here are entirely dissimilar to the facts presented in 
In re Estate of Hall
, ___ Ill. App. 3d ___, ___ N.E.2d ___ (1998), upon which plaintiffs rely, in which a same-sex relationship unsuccessfully was asserted to be the basis for a surviving spouse's share of an estate under section 2-1 of the Probate Act (755 ILCS 5/2-1 (West 1996)).

Plaintiffs cite no statutory provision which expressly preempts the City's authority to legislate in the area of its own employee benefits, nor have they referred this court to any statute which prohibits domestic partners from receiving employee benefits in Illinois.  

The power to extend to its employees both compensation and benefits is ineluctably essential to the operation of local governmental units such as the City in the present case.  See 
Nevitt v. Langfelder
, 157 Ill. 2d 116, 129-30, 623 N.E.2d 281 (1993) (
Nevitt
).  The competition in the job market involving employees from laborers to professionals must be dealt with by an employing municipal entity on a practical and realistic level if it is to possess the ability to hire and retain qualified individuals to serve the community.  
Colorado Springs Fire Fighters Ass'n., Local 5 v. City of Colorado Springs
, 784 P.2d 766, 773 (Colo. 1989); 
Schaefer v. City & County of Denver
, ___ P.2d ___ (Colo. App. 1998).  No countervailing legislation has been cited or found and, it must be concluded, the DPO is a cognizable and valid exercise of the City's "function pertaining to its government and affairs."  Ill. Const. 1970, art VII, §6(a).

Is the City's power to enact the domestic partnership ordinance limited because the City is legislating in an area of statewide concern, as plaintiffs next contend?  They assert that even if the City could create a new joint marital status, it has no power to enact the domestic benefits ordinance because it intrudes upon the uniform statewide concern, the uniform statewide application of laws governing employee benefits and who may receive them.  They therefore assert that the City acted 
ultra
 
vires
 in enacting the ordinance, regardless of whether the State Legislature has expressly preempted home rule authority in that area.  In support of their position that employee benefits are a matter of statewide concern, plaintiffs rely on 
People ex rel. Bernardi v. City of Highland Park
, 121 Ill. 2d 1, 520 N.E.2d 316 (1988) (
Bernardi
).  

Plaintiffs reliance upon 
Bernardi
 in this regard is misplaced.  In 
Bernardi
, the city of Highland Park claimed to have home rule authority to opt out of the Illinois Prevailing Wage Act, which regulated wages paid by contractors on public works projects to workers on the project.
(footnote: 2)  See 
Bernardi
, 121 Ill. 2d at 4-5.  The supreme court noted that the Prevailing Wage Act embodied a policy precluding such wages from being set locally because the reduced wages for public works projects in Highland Park also would reduce the prevailing wage on all public works projects in Lake County, since the prevailing wage was determined solely by reference to wages paid on all public works projects in a region.  
Bernardi
, 121 Ill. 2d at 13.  Highland Park's attempt to opt out of the Prevailing Wage Act affected an issue of state-wide concern because it had an impact beyond its own borders.

Here DPO affects only Chicago's personnel policies; no state policy involving any other locality is either involved or undermined, as in 
Bernardi
.  Nor does 
Bernardi
 hold that the state has a concern with uniform application of all employee benefit laws.  See 
Nevitt
, 157 Ill. 2d at 129-30.  No state preemption of a home rule unit's authority to determine the extent of health insurance coverage provided to its own workforce emerges from the 
Bernardi
 decision.

Although defining and regulating the institution of marriage no doubt is a statewide matter rather than a local concern, the DPO does not create marital relationship or status, but simply defines the type of insurance of which City employees can avail themselves.  Public or private employers who permit their employees to obtain health benefits covering anyone the employee designated, whether a parent, child, cousin, friend, or domestic partner, does not create a new type of marriage; rather, they merely extend the existing categories of beneficiaries.

Many private employers now offer insurance and other benefits to cohabiting same-sex couples.  See article 
Democratic National Committee Extends Benefits to Gay Couples
, N.Y. Times, 
May 17, 1997,
(footnote: 3) listing IBM, Microsoft, Walt Disney, Apple Computer and Time-Warner, among the approximately 500 Fortune 1000 companies that provide health benefits to domestic partners of employees.  No state statute prohibits private or public employers from offering such benefits.  Personnel policies such as these do not infringe upon the General Assembly's prerogative to define and regulate the institution of marriage.  The DPO merely creates an option for a City employee to purchase health insurance for a domestic partner, without establishing legal status competing with marriage.

Plaintiffs' claim, that the DPO "contravenes Illinois public policy" by undermining the State's policy encouraging marriage, also fails.  The Illinois Constitution expressly grants home-rule power to qualifying municipal entities over matters relating to a home-rule unit's "government and affairs," and requires the General Assembly to preempt home-rule power expressly, should that be its intent.  The Legislature has not expressly preempted home-rule power to provide benefits for domestic partners.  There is no express or implied "public policy" in Illinois forbidding the exercise of home-rule power in this area.  Plaintiffs reliance on 
Huszagh v. City of Oakbrook Terrace
, 41 Ill. 2d 387, 243 N.E.2d 831 (1968); 
Hewitt v. Hewitt
, 77 Ill. 2d 49, 394 N.E.2d 1204 (1979), and 
Jarrett v. Jarrett
, 78 Ill. 2d 337, 400 N.E.2d 421 (1979), for the proposition that local legislation cannot contradict express state policy, misses the mark.  First, 
Huszagh
 was decided in 1968 and predates the 1970 constitution that redefined home rule authority.  Second, as indicated by the very language plaintiffs cite from 
Hewitt
 and 
Jarrett
, whether non-married individuals have the same rights as married individuals is an issue for the Legislature to determine.  The General Assembly has never legislated on the question whether same-sex, cohabiting individuals may purchase the same health insurance as married individuals.  There is no public policy prohibiting the exercise of home-rule authority in this area.
(footnote: 4)
Finally, plaintiffs cite 
Lilly v. City of Minneapolis
, 527 N.W.2d 107 (1995), a case in which the court of appeals struck down Minneapolis' plan offering health insurance to the same-sex partners of city employees, because it found the plan to be a matter of statewide concern.  
Lilly
 provides little support.  In Minnesota, home rule cities have authority to legislate on matters of local concern, but not statewide concern, as in Illinois.  
Lilly
, 527 N.W.2d at 111-112.  Minnesota law, however, allows the legislature to preempt home rule authority by implication, whereas in Illinois the Legislature must preempt home rule authority expressly.  
Lilly
, 527 N.W.2d at 111.  As such, there is a presumption of state preemption in Minnesota unlike Illinois, where home rule power is presumed.  
Lilly
 does not persuade.

For the reasons set forth in this opinion, there are no bases upon which to disturb the decision of the circuit court, which must be affirmed.

Affirmed.

HOURIHANE, P.J., and GREIMAN, J., concur.

FOOTNOTES
1:
The DPO provides in its entirety, as follows:

"Eligibility for benefits - Qualified domestic partners.

A qualified domestic partner, as defined in this section, of an individual employed by the city of Chicago shall be eligible for the same benefits, including but not limited to health coverage, as are available to the spouse of an individual employed by the city of Chicago.  To be eligible for coverage as a qualified domestic partner, the city employee and the domestic partner must complete and file with the department of personnel an "Affidavit of Domestic Partnership" in which they attest that:  

(A) They are each other's sole domestic partner, responsible for each other's common welfare; and 

(B) Neither party is married; and 

(C) The partners are not related by blood closer than would bar marriage in the state of Illinois; and 

(D) Each partner is at least 18 years of age, and the partners are the same sex, and the partners reside at the same residence; and (E) Two of the following four conditions exist for the partners:  

1.  The partners have been residing together for at least 12 months prior to filing the Affidavit of Domestic Partnership,

2. The partners have common or joint ownership of a residence,

3. The partners have at least two of the following arrangements:  

a. Joint ownership of a motor vehicle,

b. A joint credit account,

c. A joint checking account,

d. A lease for a residence identifying both domestic partners as tenants,

4. The city employee declares that the domestic partner is identified as a primary beneficiary in the employee's will.

In addition to the foregoing, for a domestic partner to be qualified, the parties must agree to notify the department of personnel of any change in the circumstances which have been attested to in the documents qualifying a person for coverage as a domestic partner.

Following the termination of a domestic partnership, a minimum of 12 months must elapse before a city employee is eligible to designate a new domestic partner.

The commissioner of personnel is hereby authorized to promulgate  regulations to effectuate the purposes of this section.  The regulations shall provide that any person who submits false information in connection with this section, including an affidavit that contains inaccurate information, shall be subject to discipline as set forth in the city personnel rules.  (Added. Coun. J. 3-19-97, p. 40852) Chicago Municipal Code §2-152-072 (eff. May 16, 1997).

2:
Formerly, Ill. Rev. Stat. 1985, ch. 48, pars. 39S-1 through 39S-12, now 820 ILCS 130/0.01 through 130/12 (West 1996).  The definition of "public works" (
e.g.
 "fixed works constructed for public use by any public body ***") suggests the limit of application to be given when considering the parameters of the 
Bernardi
 opinion.

3:
Filed with City of Chicago's Memorandum in Support of its Motion to Dismiss, June 4, 1997, in 97 CH 4845.

4:
Significantly, the General Assembly itself has chosen to protect unmarried cohabiting couples in a variety of ways.  See, 
e.g.
, 750 ILCS 60/103(6) (West 1996) (extending protection of domestic violence act to "household members" including "persons who share or formerly shared a common dwelling"); 720 ILCS 5/45-1(b) (West 1996) (same).  Other laws bar or penalize sexual orientation discrimination.  See, 
e.g.
, 10 ILCS 5/29B-10 (West 1996) (fair campaign practices); 225 ILCS 20/11(e) (West 1996) (clinical social work licensing); 225 ILCS 37/27(h) (West 1996) (environmental health practitioner licensing); 225 ILCS 55/45(h) (West 1996), and 68 Ill. Adm. Code §1283.100 (1996) (marriage and family therapy licensing); 225 ILCS 106/65(e) (West 1996) (respiratory care practice); 225 ILCS 107/50(e) (West 1996) (professional counselor licensing); 720 ILCS 5/12-7.1 (West 1996) (hate crimes); 725 ILCS 5/110-5(a) (West 1996) (bail); 730 ILCS 5/5-5-3.2(a)(10) (West 1996) (sentencing factors in aggravation).