THIRD DIVISION

May 8, 2002

No. 1-01-3110

CITY OF BURBANK, ) Appeal from the 

a municipal corporation )   Circuit Court of 

) Cook County.

Plaintiff-Appellant, )   

)

v. ) 

)

JAN CZAJA, ZOFIA CZAJA, LUDWINA ) 

CZAJA, and PNC MORTGAGE CORP. )

OF AMERICA, ) The Honorable

) James F. Stack,

Defendants-Appellees. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

Some pigeons race.  Some fly away and come home again.  Some simply hang around and leave a mess.  The city of Burbank is not fond of any pigeons who live in residential areas.  It passed one ordinance that prohibited the raising of pigeons in residential areas and another that excluded pigeon-raising as a proper residential use.  On the other hand, the legislature for several years created a safe roost for carrier pigeons, later lifting that protection for pigeons who nest in Cook County.

The feathers began flying in this case when Burbank attempted to enforce its ordinance to stop Jan, Zofia, and Ludwina Czaja (the "Czajas") from raising carrier pigeons on their residential property.  It filed a lawsuit against the Czajas, alleging in its first amended complaint that the Czajas had converted a garage on their residential property into a pigeon coop and were raising pigeons in violation of city ordinances.

In their motion to dismiss, the Czajas contended there are no such ordinances, that State law had repealed them.  Burbank responded of course there are, they were lying dormant and were brought back to life in August of 1996.  The trial court granted the motion to dismiss.  We agree with Burbank.

For that reason, we reverse the trial court's order granting the Czajas' motion to dismiss and we remand this cause for further proceedings.

FACTS

Because the trial court dismissed Burbank's first amended complaint after the Czajas brought a motion to strike and dismiss, we take the following facts from that complaint and accept them as true for the purpose of this appeal.  The facts are not in dispute.

HISTORY OF STATUTES & ORDINANCES

The City of Burbank is a home rule municipal corporation located in Cook County, Illinois.  In 1972, Burbank adopted section 7-101 of the Municipal Code of the City of Burbank.  That section prohibited the raising of pigeons and other poultry for domestic purposes:

"Sec. 7-101.  Keeping, raising, selling live poultry prohibited.

It shall be unlawful to keep, raise, sell, or offer for sale, barter, or give away live baby chicks, ducklings, goslings, 
pigeons
, fowl or other poultry, domestic or otherwise, in the city except in stores or other commercial establishments engaged in the business of selling baby chicks, ducklings, goslings, 
pigeons
, fowl or other poultry for commercial purposes, and not less than six (6) of each of the aforementioned variety shall be sold to any one person.  It shall by unlawful to raise for home or domestic purposes poultry of any kind.  (Ord. No. 1-11-16-72, § 4-10)."  (Emphasis added.)

On July 1, 1985, the Carrier and Racing Pigeon Act of 1984 (the "Act of 1984") (510 ILCS 45/1 
et
 
seq
. (West 1994)) was enacted.  Section 7 of the Act of 1984 said, "A municipality or county shall not enact an ordinance which prohibits the orderly keeping of carrier pigeons."  (Emphasis added.)  510 ILCS 45/7 (West 1994).  "Carrier pigeons" were defined as racing or homing pigeons.  510 ILCS 45/2(a) (West 1994).

Section 8 of the Act of 1984 said, "This Act applies to all municipalities and counties and pursuant to paragraph (i) of section 6 of article VII of the Illinois Constitution, this Act is a limitation upon the power of home rule units to enact ordinances contrary to this Act."  510 ILCS 45/8 (West 1994).

Effective July 27, 1993, the Act of 1984 was amended -- no changes relevant to this appeal were made.  The Act's new title was the "Carrier, Racing, Hobby, and Show Pigeon Act of 1993" (the "Act of 1993").  See 510 ILCS 45/1 
et
 
seq
. (West 1998).

On March 27, 1996, Burbank adopted the Burbank Zoning Code. It comprehensively amended the prior zoning laws of the City of Burbank -- previously known as the City of Burbank Zoning Ordinance of 1971.  Section 5-4 of the Burbank Zoning Code provides for the allowed uses of property located in a single family residence district:

"Sec. 5-4 R-1 Single Family Residence District

A. Permitted Uses.  The following uses and no others are permitted as of right in the 'R-1' Single Family District.

1. Single-family detached dwellings.

2. Public libraries.

3. Public and private elementary and high schools, not including preschool, nursery schools or daycare facilities.

4. Public parks and recreational facilities.

5. Municipal-owned facilities.

6. Small community residences provided that they are located not less than 1,000 feet from another community residence.

7. One garage and one storage shed per zoning lot, and the storage shed must be located to the rear of the principal structure on the zoning lot.

8. Home occupations."

Effective August 14, 1996, the Act of 1993 was amended (the "1996 Amendment") to allow certain municipalities to prohibit or regulate the orderly keeping of certain pigeons:

"45/7. Ordinances

§ 7.  A municipality located in a county with fewer than 3,000,000 inhabitants or a county shall not enact an ordinance which prohibits the orderly keeping of carrier pigeons, hobby, or show pigeons, 
except that any municipality located within a county having 3,000,000 or more inhabitants may enact an ordinance to prohibit or regulate the orderly keeping of carrier, racing, hobby, or show pigeons
."  (Emphasis added.)  510 ILCS 45/7 (West 1998).

The City of Burbank is located in Cook County -- a county having 3 million or more inhabitants.

Burbank concedes the Acts of 1984 and 1993 stopped it from using section 7-101 of its municipal code or section 5-4(A) of its zoning code to prohibit or regulate the keeping of carrier pigeons on residential property -- 
before
 August 14, 1996.

BURBANK v. CZAJA

In November 2000, Burbank sought to enforce section 5-4(A) and section 7-101.  Specifically, Burbank sought, under the 1996 Amendment and under sections 5-4(A) and 7-101, to prohibit the orderly keeping of all pigeons in residential areas.

On November 20, 2000, Burbank filed its first amended complaint, seeking a fine, an injunction, and other relief against the Czajas for converting a detached garage on their residential property into a pigeon coop, and for raising pigeons in it, in violation of section 5-4(A) of the Burbank Zoning Code and section 7-101 of the Municipal Code of the City of Burbank.  The violations were alleged to have occurred on and after May 14, 1999.

Burbank and the Czajas agree the pigeons the Czajas are raising, and which Burbank seeks to prohibit them from raising, are, in fact, carrier or racing pigeons as defined by the Act of 1993.  See 510 ILCS 45/2 (West 1998).

In January 2001, the Czajas filed a motion to strike and dismiss Burbank's first amended complaint.  They contended Burbank could not enforce its ordinances against them because the Acts of 1984 and 1993 repealed section 7-101 and prohibited use of section 5-4(A) of the zoning ordinance to bar the raising of pigeons.  The Czajas added that the 1996 Amendment, which removed Cook County municipalities from the Act, did not allow Burbank to enforce its ordinances because the ordinances were enacted before the 1996 Amendment.  The 1996 Amendment did not "revive" Burbank's ordinances after they were made unenforceable by the Act of 1993, say the Czajas.

In July 2001, the trial court granted the Czajas' motion to strike and dismiss Burbank's first amended complaint.  This appeal followed.

DECISION

Burbank contends the trial court should not have dismissed its suit to enforce its municipal and zoning ordinances.

STANDARD OF REVIEW

A motion to dismiss brought under section 2-615 of the Code of Civil Procedure (the "Code") (735 ILCS 5/2-615 (West 1998)) attacks the legal sufficiency of a complaint.  
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 710 N.E.2d 798 (1999). 

We note the Czajas' motion to dismiss should have been brought under section 2-619 of the Code (735 ILCS 5/2-619 (West 1998)).  That is because the Czajas rely on an "affirmative matter" -- the Acts of 1984 and 1993 -- to defeat Burbank's claims.

"A section 2-619 motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter which avoids or defeats the claim."  
Cosman v. Ford Motor Company
, 285 Ill. App. 3d 250, 254, 674 N.E.2d 61 (1996), citing 
Joseph v. Collis
, 272 Ill. App. 3d 200, 206, 649 N.E.2d 964 (1995). 

We have held, however, "[d]esignating a motion under a different paragraph of the Code is not fatal."  
Cosman
, 285 Ill. App. 3d at 254.  Burbank concedes it has not been prejudiced by this error.  Thus, we treat the motion to dismiss as if it had been filed under section 2-619 of the Code.  See 
Cosman
, 285 Ill. App. 3d at 254.  

Our review is 
de
 
novo
.  
Vernon v. Schuster
, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997).  

HOME RULE

We are asked to determine whether and to what extent Burbank's ordinances were affected by the legislature's enactment of the Acts of 1984 and 1993 and of the 1996 Amendment.

Construction of statutes requires identification of legislative intent and the effect it should be given.  
Crawford v. City of Chicago
, 304 Ill. App. 3d 818, 823, 710 N.E.2d 91 (1999).  Legislative intent is ascertained by examining the statute's language and considering each section in connection with every other section.  
Crawford
, 304 Ill. App. 3d at 823.  

The most reliable indicator of legislative intent is the statute's language.  Where it is clear and unambiguous, the plain and ordinary meaning of the words will be given effect.  
Crawford
, 304 Ill. App. 3d at 823.  The rules that govern the construction of statutes are also applied in the construction of municipal ordinances.  
Crawford
, 304 Ill. App. 3d at 823.  

The powers of home rule municipalities, those municipalities with a population greater than 25,000, are derived from article VII, section 6(a), of the Illinois Constitution of 1970: 

"[A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."  Ill. Const. 1970, art. VII, §6(a).

"Home rule units are empowered to carry on activities that relate to their communities ***."  
Crawford
, 304 Ill. App. 3d at 825.  The "powers and functions of home rule units shall be construed liberally."  Ill. Const. 1970, art. VII, §6(m).  Section 6(a) gives them "the broadest powers possible."  
Scadron v. City of Des Plaines
, 153 Ill. 2d 164, 174-75, 606 N.E.2d 1154 (1992).  

Because the grant of home rule power is "broad and imprecise" (
Scadron
, 153 Ill. 2d at 174), it imposes on the courts the duty of interpreting whether any power exercised by a home rule unit exceeds its constitutional limitations (
Crawford
, 304 Ill. App. 3d at 825).

SECTION 7-101

The parties agree that before the Act of 1984, Burbank had the authority under its home rule powers to enact local zoning ordinances prohibiting "Keeping, raising, selling live poultry."  That is, Burbank had the authority to enact section 7-101, which, among other things, made it "unlawful to keep, raise, sell, or offer for sale, barter, or give away *** pigeons *** in the city except in stores or other commercial establishments engaged in the business of selling *** pigeons *** for commercial purposes ***."

Before the Act of 1984, Burbank had the power to enact section 7-101 under article VII, section 6(a), of the Illinois Constitution of 1970.  Accord 
City of Desplaines v. Gacs
, 65 Ill. App. 3d 44, 382 N.E.2d 402 (1978) (a city ordinance enacted to protect the health and safety of its citizens by prohibiting the raising of pigeons was presumptively valid).

After July 1, 1985 (the effective date of the 1984 Act), Burbank could not use the provisions of its Zoning Code to prohibit or to regulate the keeping of carrier pigeons on residential property.  The Act did not affect Burbank's power to prohibit or to regulate "baby chicks, ducklings, goslings, *** fowl or other poultry, domestic or otherwise."

"The General Assembly can expressly limit the exercise of home rule power."  
Schillerstrom Homes, Inc. v. City of Naperville
, 198 Ill. 2d 281, 762 N.E.2d 494 (2001), citing Ill. Const. 1970, art. VII, §6(h) ("The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit").  

To limit home rule powers, the legislature must specifically say the "statute constitutes a limitation on home rule units' power to enact ordinances that are contrary to or inconsistent with the statute."  
City of Chicago v. Roman
, 184 Ill. 2d 504, 519-20, 705 N.E.2d 81 (1998).  Section 8 of the Act of 1984 did that.  See 510 ILCS 45/8 (West 1994) entitled "Limitation on home rule units."

Against this background, we turn to the Czajas' first contention: any authority granted by Burbank's home rule powers to enact section 7-101 was repealed by implication when the legislature enacted section 7 of the Act of 1984, and the amendment in 1993.  Section 7-101 was void 
ab
 
initio
, say the Czajas.  After the 1996 Amendment, Burbank should have reenacted section 7-101.  

Maybe Burbank should have, but we find it did not have to.  In 
Lily Lake Road Defenders, et al., v. County of McHenry
, 156 Ill. 2d 1, 619 N.E.2d 137 (1993), the supreme court clarified the doctrines of repeal by implication and of preemption:

"The doctrine of repeal by implication is applied when two enactments of the 
same
 legislative body are irreconcilable ('horizontal inconsistency').  A statute which is repealed by implication is legally eliminated.  Repeal of the repealing statute does not revive the repealed law.  ([Citation omitted.])  The legislature must expressly reenact a statute which has been repealed by implication to render it valid and enforceable again.

The doctrine of preemption, on the other hand, is applied where enactments of two unequal legislative bodies (e.g., Federal and State) are inconsistent.  Where a statute is preempted, there is no repeal of that statute.  Rather, the subordinate legislative body's enactment is suspended and rendered unenforceable by the existence of the superior legislative body's enactment.  This being so, the repeal of the preempting statute revives or reinstates the preempted statute without express reenactment by the legislature. [Citation omitted.]"  156 Ill. 2d at 8.

In 
Lily Lake
, the supreme court reversed the trial court's holding that the Illinois Environmental Protection Act (the IEPA) (Ill. Rev. Stat. 1987, ch. 1111/2, par. 1001 
et
 
seq
.) repealed the County Zoning Act of 1935 (the Zoning Act) (Ill. Rev. Stat. 1979, ch. 34, par. 3151 
et
 
seq
.) by implication, and held McHenry county (a non-home-rule unit) possessed the authority to regulate by ordinance.  156 Ill. 2d at 12. 

The court found the legislature did not intend to repeal the Zoning Act by implication when it enacted the IEPA.  
Lily Lake
, 156 Ill. 2d at 9.  The court said: 

"[W]here a particular local zoning ordinance (as opposed to the legislature's Zoning Act) purportedly interfered with the legislative purpose of establishing a statewide environmental program, this court has held that the IEPA 
preempted
 the ordinance and rendered the ordinance unenforceable against a facility which had acquired a permit pursuant to the IEPA."  (Emphasis in original.)  
Lily Lake
, 156 Ill. 2d at 12.

"[R]epeals by implication are not favored," said the court.  
Lily Lake
, 156 Ill. 2d at 9.

Burbank's enactment of section 7-101 and the legislature's enactment of the 1984 Act are not "two enactments of the same legislative body."  Burbank's ordinances and the legislature's Act are enactments of two unequal legislative bodies -- Burbank being the subordinate legislative body.  See Ill. Const. 1970, art. VII, §§6(g) and 6(h) (sections 6(g) and 6(h) provide the exclusive methods by which the legislature may preempt a home rule power).

Under the Act of 1984, a home rule municipality could have enacted ordinances which relate to the construction and maintenance of a pigeon loft (510 ILCS 45/3 (West 1994)) or to the issuance of a carrier pigeon permit (510 ILCS 45/4 (West 1994)), but it could not have enacted ordinances which prohibit the orderly keeping of carrier pigeons (510 ILCS 45/7 (West 1994)). 

Because section 7-101 embraced more than carrier pigeons, the Act did not affect Burbank's power under section 7-101 to prohibit or to regulate "the keep[ing], rais[ing], sell[ing], or offer[ing] for sale, barter, or give away live baby chicks, ducklings, goslings, *** fowl or other poultry, domestic or otherwise."  In House debate on the Act of 1984, Representative Giorgi said: 

"Now this bill only applies to carrier pigeons or racing pigeons.  The zoning laws of a local municipality will prevail.  The building restrictions of a local municipality will prevail.  The Health Department restrictions will prevail.  ***.  You can get rid of those pigeons that are nuisances.  In this case, we're only trying to ask you to recognize pigeons that are raised by people that take pride in their sport, and are expensive birds and are accepted by communities all over the country ***."  83rd Ill. Gen. Assem., House Proceedings, May 10, 1984, at 123-24. 

Certainly, the House of Representatives understood it was enacting a preemption statute.  When the question was put to the House on May 10, 1984, Speaker Greiman said:

"I am advised that this Bill will require an extraordinary majority 
because it preempts the power of a home rule community
.  The question is, 'Shall this Bill pass?' " (Emphasis added.)  83rd Ill. Gen. Assem., House Proceedings, May 10, 1984, at 124.

The Bill passed. 

We are willing to say the Acts of 1984 and 1993 preempted Burbank's authority to enforce its 1972 ordinance prohibiting the raising and keeping of carrier pigeons.  But that is far different from saying the City's 1972 ordinance somehow became void and nonexistent.  It became dormant; it was not repealed.  That is what preemption does:

"An ordinance which is preempted is not null and void.   Instead, the preempted ordinance is simply suspended or rendered unenforceable as long as the conflicting legislation of a superior legislative body remains in effect.  Repeal of the preempting legislation, however, revives or reinstates the preempted legislation without express reenactment.  ([Citation omitted.])."  
Lily Lake
, 156 Ill. 2d at 15.

Section 7-101 was enacted before the Act of 1984.  Section 7-101 was valid when enacted, and the legislature did not specifically repeal any existing ordinance that, among other things, prohibited the raising of carrier pigeons.  

In short, preemption is not a declaration that the preexisting ordinance is repealed.  It is a declaration that it cannot be enforced.  That is what 
Lily Lake
 says -- "where a statute is preempted, there is no repeal of that statute."  156 Ill. 2d at 8.  It follows then, as said in 
Lily Lake
, "repeal of the preempting statute [Acts of 1984 and 1993] revives or reinstates the preempted statute without express reenactment by the legislature."  156 Ill. 2d at 8.

We take the clear words of the Acts of 1984 and 1993.  They command that a "county shall not enact an ordinance which prohibits the orderly keeping of carrier pigeons."  510 ILCS 45/7 (West 1994).  Once the Act of 1984 was enacted, Burbank did not violate the prohibition.  Nor did it attempt to enforce section 7-101.  Instead, Burbank allowed section 7-101 to lie dormant, like Dr. Frankenstein's creature, awaiting the legislative lightning charge that would bring the ordinance to life.

The preemption was lifted on August 14, 1996, when the legislature amended the statute to permit cities like Burbank to prohibit or regulate the orderly keeping of pigeons.  See 510 ILCS 45/7 (West 1998).

When this amendment went into effect, municipalities located in a county having at least 3 million inhabitants had the authority to regulate the orderly keeping of all pigeons concurrently with the State.  Thus, as Burbank contends, section 7-101 was valid and enforceable after August 14, 1996.  It was enforceable against the Czajas in 1999.

The Czajas did not convert their detached garage into a pigeon coop, and raise pigeons in it, until May, 14, 1999.  This was after all of section 7-101 once again became enforceable.  The Czajas were obligated to comply with that ordinance and to maintain their residence in accord with the procedures set forth in the ordinance.

SECTION 5-4(A)

The parties agree Burbank had the authority under its home rule powers to enact section 5-4(A), which listed the exclusive uses Burbank permitted as of right in "R-1" Single Family Districts.  

They disagree as to whether section 5-4(A) of the Burbank Municipal Code can be construed to prohibit or to regulate the orderly keeping of carrier pigeons.  Although Burbank enacted section 5-4(A) after the Act of 1993, Burbank did so before the Act was amended on August 14, 1996.  The Czajas say the ordinance cannot be construed to prohibit the use and keeping of racing pigeons.  We do not understand the Czajas to say the entire zoning ordinance was void on arrival.

Generally, a zoning ordinance that specifies numerous permissible uses, and which was intended to be specific with respect to such uses, will be construed to prohibit uses not otherwise specified in the ordinance.  
Dottie Dress Shop, Inc. v. Village of Lyons
, 313 Ill. App. 3d 70, 74, 729 N.E.2d 1 (2000); see also 
Williams v. City of Bloomington, McLean County
, 108 Ill. App. 2d 307, 311, 247 N.E.2d 446 (1969) ("If such and such a use is not set forth, it is prohibited.  The express uses, of course, must be read to include reasonably implied ones.")

We do not believe section 5-4(A) of the Burbank Zoning Code, enacted on March 27, 1996, violated the prohibition contained in the Acts of 1984 and 1993.  True, raising carrier pigeons was not a permitted use in residential areas, but the ordinance never was used to ban the raising of carrier pigeons.  That self-restraint by Burbank satisfied the statutes.

The preemption was lifted in 1996 when the legislature amended section 7 of the Act to specifically permit eligible municipalities, like Burbank, to prohibit or regulate the orderly keeping of pigeons.  Thus, after August 14, 1996, Burbank could use section 5-4(A) to prohibit the orderly keeping of carrier pigeons because it was not listed as a permitted use of a single family residence.  See 
Williams
, 108 Ill. App. 2d at 311.

CONCLUSION

We reverse the trial court's order dismissing plaintiff's first amended complaint with prejudice.  We remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

HALL, P.J., and SOUTH, J., concur.