801 A.2d 148

Steve TYMA, et al.,

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 20, Sept. Term, 2001.**

Court of Appeals of Maryland.

June 14, 2002.

498

Robert W. Ash (Vincent P. McCarthy of the American Center for Law and Justice Northeast, Inc., New Milford, CT; Robert R. McGill, Walkersville), all on brief, for petitioners.

Edward B. Lattner, Associate County Atty. (Charles W. Thompson, Jr., County Atty., and Marc P. Hansen, Chief, on brief), Rockville, for respondent.

Benjamin S. Boyd, Piper, Marbury, Rudnick & Wolfe, LLP, Washington, DC, Jennifer Rohr, Michael C. Hanlon, Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, brief of the American Civil Liberties Union of the National Capital Area, the American Civil Liberties Union of Maryland, the City of Takoma Park, the Mayor and City Council of Baltimore, Free State Justice, the Gay, Lesbian, Bisexual and Transgendered Community Center of Baltimore and Central Maryland, Inc., Lambda Legal Defense & Education Fund and the Public Justice Center, Inc., as amici curiae in support of appellee.

Arthur B. Spitzer, American Civil Liberties Union of the National Capital Area, Washington, DC, Deborah A. Jeon, American Civil Liberties Union of Maryland, Baltimore, of counsel.

J. Joseph Curran, Jr., Atty. Gen. of Maryland, Kathryn M. Rowe, Asst. Atty. Gen., Annapolis, brief of State of Maryland, amicus curiae.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BELL, Chief Justice.

The question this case presents is whether Montgomery County, Maryland, ("the appellee" or "the County"), exceeded its authority under, or otherwise contravened, State and federal law by enacting an ordinance that extends employment benefits to the domestic partners of county employees. The trial court, the Circuit Court for Montgomery County, concluded that the Montgomery County Council had authority under the Maryland Constitution and laws to enact such benefits legislation and further, that the ordinance was a local law that did not conflict with, and, therefore, was not preempted by, State or federal law. We agree. Accordingly, we shall affirm the judgment of the trial court.

## I.

On November 30, 1999, the Montgomery County Council (the "Council") enacted and the County Executive signed, Montgomery County Bill No. 29–99, the "Employee Benefits Equity Act of 1999 (the "Act")." Generally, the Act, which became effective March 3, 2000 and applies to all active and retired County employees, extends benefits, such as health, leave, and survivor benefits comparable to those afforded the spouses of County employees, to the domestic partners of County employees. In enacting the ordinance, the Council noted the County's "longstanding policy, in law and practice, against employment discrimination based on sexual orientation," as well as its belief that "it is unfair to treat employees differently based solely on whether the employee's partner is legally recognized as a spouse." *See* § 33–22(a).[1] In addition, the Council found that "many private and public employers provide or plan to provide benefits for the domestic partners of their employees" and that "[p]roviding domestic partner benefits will significantly enhance the County's ability to recruit and retain highly qualified employees and will promote employee loyalty and workplace diversity." *Id.*

The Act amended the definitions of "immediate family" and "relative" in Chapter 19A, Ethics, of the County Code, expanding them to include domestic partners, *see id.* at §§ 19A–4(i) [2] and (n),[3] thus, extending to domestic partners "benefits equivalent to those available for an employee's spouse or spouse's dependent," including those benefits available "under

---

**1.** All such references are to the Montgomery County Code, unless otherwise noted.

**2.** Section 19A–4(i) of the Montgomery County Code, as amended, provides:

"Immediate family means spouse and dependent children. For a public employee, immediate family also includes the employee's domestic partner, if the partner is receiving County benefits."

**3.** Section 19A–4(n), as amended, provides:

the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the federal Family and Medical Leave Act ("FMLA"), and other federal laws that apply to County employment benefits." *Id.* at § 33–22(b). To qualify as a domestic partner for purposes of the Act, the County employee and his or her partner must satisfy all of a number of specific requirements or, in the event a domestic partnership registration system exists in the jurisdiction in which the employee resides and the County's Director of Human Resources determines that the legal requirements for registration are substantially similar, legally register the domestic partnership. *See* § 33–22(c).[4] A domestic partnership terminates, § 33–22(e) instructs, by the death of a partner or its dissolution, *see* subsection (e)(1), or the occurrence of "any other change in

---

"Relative means:
"(1) the public employee's siblings, parents, grandparents, children, grandchildren;
"(2) the public employee's spouse, or domestic partner receiving County benefits, and the spouse's or partner's siblings, parents, grandparents, children, grandchildren; and the spouses of these relatives."

4. Section 33–22(c)(1) of the County Code provides:
"(c) Requirements for domestic partnership. To establish a domestic partnership, the employee and the employee's partner must ...
"(1) satisfy all of the following requirements:
"(A) be the same sex;
"(B) share a close personal relationship and be responsible for each other's welfare;
"(C) have shared the same legal residence for at least 12 months;
"(D) be at least 18 years old;
"(E) have voluntarily consented to the relationship, without fraud or duress
"(F) not be married to, or in a domestic partnership with, any other person;
"(G) not be related by blood or affinity in a way that would disqualify them from marriage under State law if the employee and partner were opposite sexes;
"(H) be legally competent to contract; and
"(I) share sufficient financial and legal obligations to satisfy subsection (d)(2)."
Section (d) addresses the acceptable evidence of domestic partnership. Pursuant to subsection (d)(1), such evidence consists of either "an affidavit signed by both the employee and the employee's partner under penalty of perjury" or an official copy of the domestic partner registra-

circumstances that disqualifies the relationship as a domestic partnership," *see* subsection (e)(2), either of which the employee is required to notify the County of within 30 days.

The appellants, employees and residents of Montgomery County, filed an action in the Circuit Court for Montgomery County, in which they requested the court to enter a declaratory judgment that the Act is invalid and an order enjoining its implementation. In their complaint, the appellants alleged, as they would later argue, that the Act exceeded the County's authority to enact local laws, conflicted with State law, was preempted by federal law, and was unconstitutionally vague.[5] The Circuit Court rejected all of these arguments. Thus, it granted the County's motion for summary judgment, denied the appellants' cross-motion, and declared the Act constitutional.[6] Dissatisfied with that result, the appellants noted an appeal to the Court of Special Appeals and filed in this Court a Petition for Writ of Certiorari, which we granted while the appeal was pending in the intermediate appellate court. As indicated, we shall affirm the judgment of the Circuit Court, holding that, despite the challenges presented by the appellants, the County's action in passing the Act is authorized under the constitution and laws of this State and that it conflicts with neither State nor federal law.

## II.

The trial court properly grants summary judgment, in accordance with Maryland Rule 2–501(e), "if the motion and

---

tion, and under subsection (d)(2), evidence that the employee and partner share certain of several enumerated items, such as a joint lease, *see* § (d)(2)(A), or checking account, *see* § (d)(2)(C), that may document a domestic partnership.

5. In this Court the appellants have not pursued their vagueness argument. They also have abandoned the argument made below that the Act conflicted with the State's sodomy statute.

6. The Circuit Court for Montgomery County broadly declared, "the Employee Benefits Equity Act of 1999 is valid." We consider the propriety of this declaration only in light of the issues that the appellants have raised and argued in this Court.

response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Jones v. Mid–Atlantic Funding Co.*, 362 Md. 661, 675–76, 766 A.2d 617, 624–25 (2001); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 144, 642 A.2d 219, 224 (1994); *Gross v. Sussex, Inc.*, 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993). This Court, like any appellate court, reviews the grant of summary judgment to determine whether the trial court was legally correct in entering the judgment. *Murphy v. Merzbacher*, 346 Md. 525, 530–31, 697 A.2d 861, 864 (1997); *Goodwich v. Sinai Hosp., Inc.*, 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996); *Hartford Ins. Co.*, 335 Md. at 144, 642 A.2d at 224; *Gross*, 332 Md. at 255, 630 A.2d at 1160. And, because an appellate court has ' "the same information from the record and decide[s] the same issues of law as the trial court,' " its review of an order granting summary judgment is de novo. *Green v. H & R Block, Inc.*, 355 Md. 488, 502, 735 A.2d 1039, 1047 (1999) (quoting *Heat & Power v. Air Products & Chemicals, Inc.*, 320 Md. 584, 591–92, 578 A.2d 1202, 1206 (1990)).

## III

Article XI–A of the State Constitution, known as the "Home Rule Amendment," enabled counties, like Montgomery County, which chose to adopt a home rule charter, to achieve a significant degree of political self-determination. *See McCrory Corp. v. Fowler*, 319 Md. 12, 16, 570 A.2d 834, 835 (1990). "Its purpose was to [ ] transfer the General Assembly's power to enact many types of county public local laws to the Art. XI–A home rule counties." *Id.* at 16, 570 A.2d at 836, citing generally, *Bd. of Election Laws v. Talbot County*, 316 Md. 332, 344, 558 A.2d 724, 730 (1989); *Griffith v. Wakefield*, 298 Md. 381, 384, 470 A.2d 345, 347 (1984); *Mayor and Council of Forest Heights v. Frank*, 291 Md. 331, 342, 435 A.2d 425 (1981); *Cheeks v. Cedlair Corp.*, 287 Md. 595, 597–598, 415 A.2d 255, 256 (1980). We explained the rationale in *State v. Stewart*, 152 Md. 419, 422, 137 A. 39, 41 (1927):

"The wisdom of incorporating in the organic law of the state such provisions as are contained in this article had been urged for a number of years prior to its adoption, the reasons assigned by its proponents being that a larger measure of home rule be secured to the people of the respective political subdivisions of the state in matters of purely local concern, in order that there should be the fullest measure of local self-government, and that these local questions should thus be withdrawn from consideration by the General Assembly, leaving that body more time to consider and pass upon general legislation, and to prevent the passage of such legislation from being influenced by what is popularly known as 'log-rolling'; that is, by influencing the attitude and vote of members of the General Assembly upon proposed general laws by threatening the defeat or promising the support of local legislation in which a particular member might be peculiarly interested."

Sections 1 and 1A of Article XI–A empower Baltimore City and the counties in Maryland to adopt a charter form of local government. Section 2 requires the General Assembly to provide a grant of express powers for charter home rule counties. Section 3 empowers any county adopting a charter form of government, "[f]rom and after the adoption of a charter," to enact local laws upon all matters covered by the express powers the General assembly was authorized to grant, "except that in the case of any conflict between said local law and any General Public Law now or hereafter enacted the General Public Law shall control."

Md. Ann.Code, Art. 25A (1957, 1985 Repl.Vol., 2001 Supp.), the "Express Powers Act," was the legislative response, given by Ch. 456 of the Laws of Maryland of 1918, to the directive contained in § 2 of Article XI–A. Section 5(S) of the Express Powers Act further limits a home rule county's ability to legislate. It provides, in relevant part:

"The foregoing or other enumeration of powers shall not be held to limit the power of the county council ... to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, as may be

proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.

"Provided, that the powers herein granted shall only be exercised to the extent that the same are not provided for by Public General Law; provided, however, that no power to legislate shall be given with reference to licensing, regulating, prohibiting or submitting to local option, the manufacture or sale of malt or spirituous liquors."

This Court commented on the effect of these various provisions in *Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 160, 252 A.2d 242, 246 (1969), in which we considered whether the legislative powers delegated to the Montgomery County Council included the power to pass a fair housing law. *Id.* at 155, 252 A.2d at 243. We said:

"The Council, having been given 'full' legislative power as specified by Art. XI–A, is also given statutory power to pass 'all' ordinances it deems expedient under the police power and the only limit on its powers is stated to be that such an ordinance cannot be inconsistent with the provisions of Art. 25A or the laws of the State, and the further provisos 'that the powers herein granted shall only be exercised to the extent that the same are not provided for by public general law' and that 'no power to legislate shall be given with reference to licensing, regulating, prohibiting or submitting to local option, the manufacture or sale of malt or spirituous liquors.' "

Therefore, counties enjoy full legislative power as specified by Art. XI–A and statutory power to pass all ordinances they deem expedient under the police power, limited only by the provisions of Art. 25A, the laws of the State, and the admonishment that such power "shall only be exercised to the extent that the same are not provided for by public general law." We concluded that the county could enact a fair housing law.

■ "The classification of a particular statute as general or local is based on subject matter and substance and not merely on form."[7]  *Cole v. Secretary of State*, 249 Md. 425, 433, 240 A.2d 272, 277 (1968), citing *Ness v. Supervisors of Elections of Baltimore City*, 162 Md. 529, 536, 160 A. 8, 11 (1932) and *State v. Stewart, supra*, 152 Md. at 425, 137 A. at 42.  A general law is one that pertains to two or more geographical subdivisions within the State, *see* Maryland Constitution, § 4 of Article XI–A,[8] and "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state."  *Cole v. Secretary of State*, 249 Md. at 435, 240 A.2d at 278.  A local law, on the other hand, applies to only one subdivision, *see Steimel v. Bd. of Election Supervisors of Prince George's County*, 278 Md. 1, 5, 357 A.2d 386, 388 (1976), and pertains only to a subject of local import.  *Norris v. Mayor and City Council of Baltimore*, 172 Md. 667, 192 A. 531, 537 (1937).

■ This Court has recognized that even a law that is local in form or the operation of which is, by it terms, confined to a single county, may be a general law, nonetheless.  That is the case when such law affects the interests of the whole state.

---

7. In *Norris v. Mayor and City Council of Baltimore*, 172 Md. 667, 680, 192 A. 531, 537 (1937), addressing whether an act requiring the use of voting machines in Baltimore City was a local law for Baltimore City and, therefore, could not be passed by the Legislature, we commented on the difficulty of defining the difference between a public local law and a public general law, offering the following:

"[I]t may be said that a 'public local law' is a statute dealing with some matter of governmental administration peculiarly local in character in which persons outside of that locality have no direct interest, a 'public general law' is one which deals with a subject in which all the citizens of the state are interested alike, and the fact that it permits or directs differences in matters of mere administrative detail suited to the peculiar needs of localities does not make it any the less a public general law."

8. Article XI–A, § 4 provides:

"[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act."

*See McCrory, supra,* 319 Md. at 17, 570 A.2d at 836; *Cole v. Secretary of State,* 249 Md. at 434, 240 A.2d at 278 ("some statutes, local in form," are "general laws, since they affect the interests of the whole state"); *Gaither v. Jackson,* 147 Md. 655, 664–65, 128 A. 769, 772–73 (1925) ("a law is not necessarily a local law merely because its operation is confined ... to a single county, if it affects the interests of the whole state"). Thus, whether a law is general or local is "to be determined by the application of settled legal principles to the facts of particular cases in which the distinction may be involved." *Dasch v. Jackson,* 170 Md. 251, 260, 183 A. 534, 537–38 (1936).

## IV

The appellants start with the premise that "Maryland law expressly prohibits recognition of same-sex and common law 'marriages,' a fortiori, it expressly prohibits the granting of the rights of same-sex, common law marriage to same-sex partners of Montgomery County employees disguised as a domestic partners benefits ordinance." In support of that premise, they rely on *Maryland Comm'n on Human Relations v. Greenbelt Homes,* 300 Md. 75, 83–84, 475 A.2d 1192, 1197 (1984) (quoting *Prince George's County v. Greenbelt Homes,* 49 Md.App. 314, 319–20, 431 A.2d 745, 748 (1981)), in which this Court observed:

> "Only marriage as prescribed by law can change the marital status of an individual to a new legal entity of husband and wife. The law of Maryland does not recognize common law marriages (*Henderson v. Henderson,* 199 Md. 449, 454, 87 A.2d 403 (1952)) or other unions of two or more persons-such as concubinage, syneisaktism, relationships of homosexuals or lesbians-as legally bestowing upon two people a legally cognizable marital status. Such relationships are simply illegitimate unions unrecognized, or in some instances condemned, by the law."

Thus, the appellants assert that the County exceeded its authority under the constitution and laws of Maryland by extending employment benefits to the domestic partners of its

employees because Maryland does not recognize either same-sex or common law marriages. They argue that "[t]he County's actions are an unlawful, back-door attempt to circumvent State law which disallows same-sex unions" and "an attempt to legitimize illegitimate relationships under Maryland law by attempting to create, in the guise of a benefits ordinance, a legal equivalency between lawful spouses and same-sex domestic partners." [9] They further assert that the recognition of domestic partnerships, an *ultra vires* act, "affects the interests of the whole State as well as interests outside of the state" and, in addition, requires the expenditure of state funds. They conclude that the provision of such benefits to domestic partners is inconsistent with federal benefits laws that do not include domestic partners among the enumerated "qualified beneficiaries." [10]

Contrary to the appellants' position, the County maintains that "the Act does not create a marital relationship between domestic partners;" rather, "it merely extends to domestic partners many of the employment benefits currently available to County employees' spouses." Relying upon the Home Rule Amendment and the general welfare clause, and citing the opinions of this Court in *Montgomery Citizens League v. Greenhalgh*, 253 Md. at 161, 252 A.2d at 247, and *Snowden v. Anne Arundel County*, 295 Md. 429, 438, 456 A.2d 380, 385 (1983), the County argues that it clearly is authorized to extend employment benefits "where those benefits serve a valid public purpose," in this case, "recruiting and retaining qualified employees and promoting employee loyalty." Citing decisions from other jurisdictions reviewing similar laws and rejecting the argument that such laws implicate the State's

---

9. As evidence of the County's intention to create a same-sex equivalent to marriage, the appellants point to the fact that the requirements for domestic partnership generally parallel those for marriage. *See* § 33–22(c), *supra*, n. 1.

10. The appellants cite, for example, sections of the Internal Revenue Code, pertaining to COBRA, that define "qualified beneficiaries" as the plan participant's spouse and dependent children. *See generally* I.R.C. § 152 (1986).

interest in marriage, *see, e.g., Slattery v. New York,* 266 A.D.2d 24, 697 N.Y.S.2d 603, 605 (1999), *appeal dismissed,* 94 N.Y.2d 897, 706 N.Y.S.2d 699, 727 N.E.2d 1253, 95 N.Y.2d 823, 712 N.Y.S.2d 907, 734 N.E.2d 1208 (2000) ("there are enormous differences between marriage and domestic partnership, and, in light of those very substantial differences, the DPL cannot reasonably be construed as impinging upon the State's exclusive right to regulate the institution of marriage"); *Crawford v. Chicago,* 304 Ill.App.3d 818, 237 Ill.Dec. 668, 710 N.E.2d 91, 98–99, *petition to appeal denied,* 185 Ill.2d 621, 242 Ill.Dec. 135, 720 N.E.2d 1090 (1999) ("Nothing in the DPO purports to create a marital status or marriage as those terms are commonly defined. Rather, the DPO addresses only health benefits extended to City employees and those residing with them"); *Schaefer v. City and County of Denver,* 973 P.2d 717, 719 (Colo.Ct.App.1998), *cert. denied* (April 12, 1999) ("The ordinance qualifies a separate and distinct group of people who are not eligible to contract a state-sanctioned marriage to receive health and dental insurance benefits from the City. Therefore, the ordinance does not adversely impact the integrity and importance of the institution of marriage"); *Lowe v. Broward County,* 766 So.2d 1199, 1206 (Fla.Dist.Ct.App.2000), *review denied,* 789 So.2d 346 (Fla.2001) ("The Act does not create a legal relationship that, because of the interest of the state, gives rise to rights and obligations that survive the termination of the relationship. Unlike a traditional marriage, a domestic partnership is purely contractual, based on the mutual agreement of the parties"), it argues that because it "does not interfere with State interests," the Act is a local law. The out of State cases have upheld these similar laws on the basis that the applicable constitutional provisions, as is the case here, delegate broad law-making authority to local governments. *See, e.g., Crawford v. Chicago,* 237 Ill.Dec. 668, 710 N.E.2d at 96; *Schaefer v. City and County of Denver,* 973 P.2d at 720. Only when "the enabling statute expressly limits a local government's ability to grant employment benefits to 'its employees and dependents,' " the County asserts, "have courts in some jurisdictions invalidated similar laws." *See,*

*e.g., Arlington County v. White,* 259 Va. 708, 528 S.E.2d 706 (2000); *Lilly v. Minneapolis,* 527 N.W.2d 107 (Minn.App. 1995).

The County also asserts that it is authorized to fund the Act with State monies, which the State generally provides for any valid public purpose. It further argues that federal benefits laws do not preempt the Act because "these laws represent federal minimum standards that the County is free to exceed at its choosing."

## IV

We agree with the Circuit Court that the County had the authority, and clearly so, to enact the subject benefits legislation and that the Act is a local law that does not infringe upon the Legislature's ability to regulate marriage on a state-wide basis. As we have seen, Article 25A, § 5(S) of the Maryland Code, which implements Article XI–A of the Maryland constitution, authorizes counties, notwithstanding any enumeration of powers in that article, to enact "such ordinances as may be expedient in maintaining the peace, good government, health and welfare of the county" that "are not provided for by public general law." [11]

We discussed § 5(S) at length in *Snowden v. Anne Arundel County, supra.* In that case, the issue presented was whether Anne Arundel County was empowered to enact a program to pay the costs incurred by county employees in mounting a successful defense to criminal charges arising from the performance of their duties. 295 Md. at 431, 456 A.2d at 381. We held that § 5(S) provided the authorization. Describing § 5(S) as a "general welfare" clause that had been broadly construed to permit charter counties to legislate beyond the powers expressly enumerated in the Express Powers Act, *id.* at 432, 456 A.2d at 382, we explained:

---

11. Article 25A, § 5(S) specifically prohibits counties from legislating with reference to licensing, regulating, prohibiting or submitting to local option, the manufacture or sale of malt or spirituous liquors.

"Gratification would not be afforded the purposes of home rule or the reasons which prompted it if the language of § 5(S) of Art. 25A were not to be construed as a broad grant of power to legislate on matters not specifically enumerated in Art. 25A and the language of that section clearly indicates that such a construction is sound....

.... [N]ot only does it empower legislative action designed to carry out, exercise and implement enumerated powers, it goes further to add that power is given 'as well' to ordain for the maintenance of peace, good government, health and welfare of the County."

*Id.* at 432–33, 456 A.2d at 382 (quoting *Greenhalgh, supra,* 253 Md. at 160–61, 252 A.2d at 246). We concluded that the program was an extension of employment benefits, which was well within the scope of the authority given by § 5(S), reasoning that the public benefitted from the challenged ordinance because its provisions "better enable[d] the County to recruit and retain qualified ... employees, and to maintain morale." *Id.* at 438, 456 A.2d at 385.

The Act at issue in this case does not, and does not purport to, define, redefine or regulate marriage in Maryland. Indeed, the Act itself includes the purpose for which the County enacted it, setting out the County's specific findings that "many private and public employers provide or plan to provide benefits for the domestic partners of their employees" and that "[p]roviding domestic partner benefits will significantly enhance the County's ability to recruit and retain highly qualified employees and will promote employee loyalty and workplace diversity." Although not expressly enumerated, Home Rule counties in Maryland, by necessary implication from the powers that the General Assembly enumerated as well as § 5(S)'s catchall provision, must have the power to regulate local employment and, as to that, its employees.

We hold the purpose underlying the benefits legislation here at issue to be consistent with that which the *Snowden* court found sufficient to uphold the ordinance challenged in that case. Moreover, the reasoning of that decision applies with

equal, if not greater, force to the case *sub judice.*[12] We see no reason why, if reimbursing the private legal expenses of certain county employees charged with a criminal offense qualifies as a valid public purpose, extending to the domestic partners of county employees benefits comparable to those afforded to the spouses of county employees, does not also qualify. Thus, we agree with the County and amici's argument, and the Circuit Court's conclusion, that the Act is well within the scope of the authority delegated to the County under § 5(S).

The determination that the County has the authority to pass the subject Act under § 5(S) also disposes of the appellants' argument that the Act is general, or non-local, legislation. Such benefits legislation, moreover, does not infringe upon the State's interest in marriage. This Court has invalidated ordinances passed by Home Rule counties only when they have intruded on some well defined State interest.[13] *See McCrory v. Fowler, supra,* 319 Md. at 20, 570 A.2d at 838. In *McCrory,* Montgomery County enacted an ordinance providing a private cause of action for violations of the county's employment

---

12. Our determination that *Snowden v. Anne Arundel County, supra,* is controlling disposes of the appellants' argument that the Act is somehow invalidated because "the costs for these benefits will be borne by County and State taxpayers." In *Annapolis v. Anne Arundel County,* 347 Md. 1, 698 A.2d 523 (1997), we rejected the argument made by the City of Annapolis "that most charter counties do not have general taxing authority to include general appropriation authority," *id.* at 11, 698 A.2d at 528, and pointed out that any county, charter counties included, is authorized to appropriate money for its governmental purposes, *i.e.,* any purpose within the authority of the county to perform. *Id.* at 12, 698 A.2d at 528. As the *Snowden* court explained, "So long as the legislation has a substantial relation to the public welfare and can fairly be said to serve a public purpose, it is not the courts' function to strike it down, merely because we fear it may lead to unwise or unfortunate results." *Id.* at 434, 456 A.2d at 383 (quoting *Frostburg v. Jenkins,* 215 Md. 9, 16, 136 A.2d 852, 855 (1957)).

13. The converse also is true: whatever the form of the legislation, where the subject matter is "exclusively local" to the county, it is a local law. *See Park v. Board of Liquor License Comm'rs for Baltimore City,* 338 Md. 366, 378, 658 A.2d 687, 693 (1995); *State v. Stewart, supra,* 152 Md. at 425, 137 A. at 42.

discrimination ordinance. Noting that "[i]n Maryland, the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law of this State" and that "the creation of new judicial remedies has traditionally been done on a statewide basis," *id.*, citing *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), this Court struck the ordinance down as a non-local law. *See Dasch v. Jackson, supra,* (state statute concerning the licensing of paper hangers in Baltimore City was not a "local law" within the meaning of Article XI–A); *Gaither v. Jackson, supra,* (state statute providing for gubernatorial appointment of auctioneers in Baltimore City, with payment by the auctioneers of license fees and duties to the State, was not a "local law" under Article XI–A); *Bradshaw v. Lankford,* 73 Md. 428, 431–33, 21 A. 66, 66–67 (1891) (because it would deprive people of the entire state of the common right to take oysters within the waters of that county, prohibition of oyster dredging in Somerset County is not a "local law").

To be sure, in the Act, the requirements for domestic partnership generally parallel those for marriage. *See* § 33–22(c), *supra,* n. 1. On the other hand, the Act does not create "a legal equivalency between lawful spouses and same-sex domestic partners" or otherwise impinge upon the State's interest in marriage. It simply provides that "[a]ny benefit the County provides for the spouse . . . of a County employee or the spouse's dependent must be provided, in the same manner and to the same extent, for the domestic partner of a County employee and the partner's dependents, respectively." *See* § 33–22(b). And that essentially is all that it does. Nothing in the Act purports to, or can be construed to, create an alternate form of marriage, authorize common law marriage or create any legal relationship. Nor does the Act, by its terms or implication, restrict, modify or alter any rights incident to a marriage recognized in this State or give one domestic partner rights, beyond the employment benefits enumerated, against the other. And, as the State of Maryland, as amicus curiae, points out:

"The partners gain no rights in property and income of the other that are earned during the marriage and have no legally protected share in each other's estates. Termination of the relationship requires no legal process or judicial intervention, and can be done unilaterally by the filing of a notice with the county."

As a matter of fact, therefore and in sum, the Act affects only the personnel policies of Montgomery County and does not implicate the State's interest in marriage or affect the State's ability to regulate marriage on a statewide basis. Moreover, the only employer the ordinance impacts is the County; it has no effect outside the County and, therefore, no statewide interests are affected. The ordinance simply has no resemblance to other enactments that we have held were not local laws.

This conclusion is consistent with the results reached by our sister courts that have addressed the issue. Indeed, all of the courts that have considered domestic partnership laws, including those that have struck down such laws,[14] *see Connors v. Boston*, 430 Mass. 31, 714 N.E.2d 335 (1999); *Lilly v. Minneapolis, supra, Arlington County v. White, supra*, have refused to hold that the mere enactment of such laws creates "a legal

---

14. The statutory laws of Minnesota and Massachusetts, for example, specifically enumerate the persons to be included within the term, "dependent." In Minnesota, statute defines "dependents" to mean "spouse and minor unmarried children under the age of 18 years and dependent students under the age of 25 years actually dependent upon the employee," thus excluding domestic partners. *Lilly v. Minneapolis*, 527 N.W.2d 107, 110–11 (Minn.App.1995). In Massachusetts, "dependents" are "defined as spouses, children under nineteen years of age, and children over nineteen years who are unable to provide for themselves." *Connors v. Boston*, 430 Mass. 31, 714 N.E.2d 335, 338 (1999). On that basis, the Minnesota intermediate appellate court and the Supreme Judicial Court of Massachusetts struck down an ordinance and an executive order, respectively. To like effect, Virginia law expressly limits a local government's authority to grant employment benefits to "employees and dependents." *Arlington County v. White*, 259 Va. 708, 528 S.E.2d 706, 712 (2000). The Supreme Court of Virginia struck down Arlington County's domestic partnership law, holding its definition of "dependent" to be unreasonable because it was not limited to a spouse, child, or financially dependent partner. *Id.* at 712–15, 528 S.E.2d 706.

equivalency between lawful spouses and same-sex domestic partners." *See, e.g., Schaefer v. City and County of Denver, supra,* 973 P.2d at 720 ("the ordinance does not adversely impact the integrity and importance of the institution of marriage"); *Lowe v. Broward County,* 766 So.2d 1199, 1206 (Fla.Dist.Ct.App.2000) ("We disagree with Lowe's contention that the Act has created a 'new marriage-like relationship' "); *Crawford v. Chicago, supra,* 237 Ill.Dec. 668, 710 N.E.2d at 96, 98 (the DPO "does not address the panoply of statutory rights and obligations exclusive to the traditional marriage," "is purely contractual, based on the mutual agreement of the parties," and does not "purport[ ] to create a marital status or marriage as those terms are commonly defined, and addresses only health benefits extended to City employees and those residing with them"); *Connors,* 714 N.E.2d at 338 n. 11 ("Contrary to the plaintiffs' claims, we see nothing in the executive order that creates the 'equivalent' of common-law marriage for registered domestic partners, that conflicts with any criminal law of the Commonwealth, or that otherwise seeks to define the marital status between two individuals in contravention of any Massachusetts statute or the Massachusetts Constitution"); *Slattery v. City of New York,* 179 Misc.2d 740, 686 N.Y.S.2d 683, 688 (Sup.Ct.), aff'd, 266 A.D.2d 24, 697 N.Y.S.2d 603 (1999), *appeal dismissed,* 94 N.Y.2d 897, 706 N.Y.S.2d 699, 727 N.E.2d 1253 (2000)[15] ("as compared to marital relationships, domestic partnerships are marked by their lack of formalization, lack of legal protections, and by the significantly fewer rights that are extended to the domestic partners"); *see also Heinsma v. City of Vancouver,* 144 Wash.2d 556, 29 P.3d 709, 713 (2001) (concluding from the facts that the City's giving domestic partners of its employees insurance benefits does not entitle them to receive any legal benefits the State extends to married couples and that the City's recognition of domestic partnership is limited to its

---

**15.** The Appellate Division modified the judgment of the Supreme Court "only to formally declare, since a declaration was sought, that the DPL [wa]s valid to the extent challenged." *Slattery v. City of New York,* 266 A.D.2d 24, 697 N.Y.S.2d 603, 605 (1999).

employee benefits program, that the City's recognition of domestic partnership is limited in scope and does not affect the Legislature's ability to regulate familial relationships on a statewide basis); *City of Atlanta v. Morgan,* 268 Ga. 586, 492 S.E.2d 193, 195–96 (1997).[16]

█ Finally, as they do with regard to the marriage laws and public policy arguments, the appellants contend that "[t]he Act provides for the 'equivalent of' Consolidated Omnibus Budget Reconciliation Act benefits,[17] federal Family and Medical Leave Act benefits, as well as 'other federal laws that apply to County employment benefits," specifically, the Public Health Services Act, 42 U.S.C. §§ 300bb–1 to –8, and that because these "equivalents" are neither federally funded nor the result of the amendment of the federal programs, the Act "is an ultra vivres legislative enactment to State funded benefits plans and implicates use of State monies without State legislative warrant." We agree with the County and the Circuit Court that these laws represent minimum standards, which the County is permitted, and in this case elected, to exceed. *See Kinek v. Paramount Communications, Inc.,* 22 F.3d 503, 510 (2nd Cir.1994). Similarly, the regulations implementing the FMLA state, "an employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700(a).

---

16. A local law authorized pursuant to the Express Powers Act, nevertheless, may be preempted by conflict, express preemption, or implied preemption. *See Montrose Christian School Corp. v. Walsh,* 363 Md. 565, 579 n. 5, 770 A.2d 111, 119 n. 5 (2001); *Talbot County v. Skipper,* 329 Md. 481, 487–88, 620 A.2d 880, 883 (1993): None of these apply to the case *sub judice.* No Maryland statute expressly preempts the ordinance at issue. And, because, as we have seen, the ordinance does not impact the marriage laws, only local employment, no Maryland statute conflicts with it or impliedly preempts it.

17. The Consolidated Omnibus Budget Reconciliation Act of 1985 amended both the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1161 to 1168 and the Public Health Services Act to provide temporary continuation of health insurance coverage.

A similar position has been taken by other courts that have considered the issue; they have overwhelmingly concluded that local domestic partnership legislation is not preempted by federal law. *See, e.g., Lowe, supra,* 766 So.2d at 1207–08; *Slattery, supra,* 697 N.Y.S.2d at 604–05; *Schaefer, supra,* 973 P.2d at 720–21; *Morgan, supra,* 492 S.E.2d at 195–96.

■■■ Thus, to the extent that its power to do so is challenged, we hold that a home rule county that provides benefits to the domestic partners of its employees does not exceed its local lawmaking authority or otherwise undermine State and federal law.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED, WITH COSTS.*