JOAN BERNARD ARMSTRONG, Chief Judge.
 

 hThe plaintiffs, citizens and taxpayers in the City of New Orleans (hereinafter the City), filed suit seeking a declaration that the City and the City Council acted
 
 ultra vires
 
 and without statutory authority when they provided for the registry of “Domestic Partnerships”, and subsequently used this registry as the basis for its extension of health insurance coverage and benefits to the unmarried “domestic partners” of City employees. The plaintiffs sought to enjoin the City from continuing to enforce the ordinances and policies relating to registry of domestic partnership and the extension of benefits to domestic partners of City employees.
 

 The trial court granted the City’s Peremptory Exceptions of No Right of Action, No Interest in Plaintiff to Institute Suit, and No Cause of Action. This court affirmed the trial court’s rulings on the Exception of No Right of Action and No Interest in Plaintiffs to Institute Suit; however, we reversed the judgment maintaining the Exception of No Cause of Action. The Louisiana Supreme Court granted writs, reversed this Court’s affir-mance of the trial court’s ruling on the Exception of No Right of Action and No Interest in Plaintiffs to Institute Suit, _[^ound that the plaintiffs had standing to assert their claims challenging the City’s ordinance instituting the Domestic Partner Registry and the City’s extension of health insurance coverage to its employees’ domestic partners, and remanded the case to the trial court for further proceedings.
 
 Ralph v. City of New Orleans,
 
 06-0153 (La.5/5/06), 928 So.2d 537. Although La. C.Civ.Proc. art. 1001 required the defendants to file their answer within ten days after their exceptions were overruled by the Supreme Court, the record does not contain their answer. We note that La. C.Civ.Proc. art. 966 provides that while a plaintiff may move for summary judgment at any time after the answer has been filed, the defendant’s motion may be made at any time.
 

 The plaintiffs and defendants
 
 [1]
 
 filed cross Motions for Summary Judgment, and the plaintiffs filed a Motion for Default. The trial court denied the plaintiffs’ motions without oral argument and, following a hearing, granted the City’s and the City Council’s Motion for Summary Judgment dismissing the plaintiffs’ petition with prejudice. From that summary judg
 
 *149
 
 ment, the plaintiffs appeal. For the reasons that follow, we affirm the judgment of the trial court.
 

 The plaintiffs contend that the trial court erroneously granted the defendants’ Motion for Summary Judgment. Summary judgment procedure is favored, and is designed to secure the just, speedy and inexpensive determination of every action, unless disallowed by La.C.Civ.Proc. art. 969 for certain domestic litigation. La. C.Civ.Proc. art. 966 A(2). A party’s motion for summary judgment shall be ^granted, and judgment rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.Civ. Proc. art. 966 B. The burden of proof remains with the mover; however, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La.C.Civ.Proc. art. 966 C(2). A fact is “material” when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recoveiy.
 
 Hardy v. Bowie,
 
 98-2821, p. 6 (La.9/8/99), 744 So.2d 606, 610. We review summary judgments
 
 de novo. Id.
 

 The plaintiffs argue that the trial court should have granted their motion for summary judgment, and denied that filed by the defendants. However, as noted above, La.C.Civ.Proc. art. 966 allows a plaintiff to file a motion for summary judgment only after an answer has been filed. Because the record on appeal does not contain a copy of or reference to an answer by the defendants, we must conclude that the plaintiffs’ motion for summary judgment is premature.
 

 l4We note that while the trial court denied the plaintiffs’ motion for default judgment, the plaintiffs have not assigned that action by the trial court as an error for purposes of this appeal. Therefore, we will not address the trial court’s denial of the plaintiffs’ motion for default judgment.
 

 The plaintiffs contend in their petition that the ordinances in question violate Article VI, § 9 of the Louisiana Constitution, which provides in pertinent part:
 

 § 9. Limitations of Local Governmental Subdivisions
 

 Section 9. (A) Limitations. No local governmental subdivision shall ... (2) except as provided by law, enact an ordinance governing private or civil relationships.
 

 (B) Police Power Not Abridged. Notwithstanding any provision of this Article, the police power of the state shall never be abridged.
 

 The plaintiffs also claim that the City’s actions violate a strong Louisiana public policy favoring marriage over unmarried cohabitation.
 

 The defendants argue that the Domestic Partnership Registry does not govern private or civil relationships, that the City is legally allowed to offer healthcare benefits to its employees, and that Louisiana has no stated public policy favoring marriage over unmarried cohabitation.
 

 The following facts were established in the record:
 

 
 *150
 
 1. The City is a municipality duly created under the laws of the State of Louisiana.
 

 2. The City Council is the governing authority of the City.
 

 3. On or about July 15, 1993, the City Council adopted and codified local ordinances concerning “Domestic Partnerships” by enacting Ordinance No. 15,986 [sM.C.S. The ordinance was returned by the Mayor on July 22, 1993 and became law that day at 5:20 p.m.
 

 4. Audio tapes of the July 15,1993 City Council meeting were provided in response to the plaintiffs’ Request for Production No. 1. Immediately preceding the vote on Ordinance No. 15,986, its original sponsor, Councilmember Johnny Jackson, Jr., noted
 
 [2]
 
 :
 

 [T]his is addressed [to] a situation that [isn’t] just in the gay community, or just situations that exist in the heterosexual community, [or] in the elderly community. And let me just say, this is not [without] a precedent. I served in the Legislature for fourteen years, and we introduced legislation up there to legalize situations, and in fact, even went further, to establish legal sanctions for persons who had lived together for many years, and were commonly known as “common law”. Or, even in fact, when children of, uh, different relationships where there were questions. I think what this does is to establish a registry, and we have amended out some of the other portions of the [original] legislation, because we really need to determine, particularly as it relates to health benefits that the City extends to City employees that might establish a domestic relationship. We had no figures to determine what that would be. And so, with the advice of the City Attorney’s office, with the advice of the C.A.O., and with consultation with the Clerk [of Council], as well as with the proponents of this ordinance, we have put it in the form that it begins to provide us at least with the framework to build upon. And I would at this point ask that we give unanimous support to the ordinance. Move adoption.
 
 [3]
 

 5.Ordinance No. 15,986 establishing a “Domestic Partnership Registry” for the City, was signed by the Mayor and became law on July 22,1993.
 

 | f,6. On or about June 18, 1999
 
 [4]
 
 , the City Council adopted Ordinance No. 19,278 M.C.S., to amend and reenact Chapter 86 of the City Code, which contained the Domestic Partnership ordinances, relocating these ordinances to a new chapter of the City Code, Chapter 87, entitled “Domestic Partnerships.” Ordinance No. 19,278 was signed by the Mayor and became law on June 22,1999.
 

 7. Section 87-1 of the City Code, entitled “Purpose” provides in pertinent part:
 

 
 *151
 
 (a) The city’s interest in strengthening and supporting all caring, committed and responsible family forms has led to the definition and recognition of the domestic partnership as a relationship and family unit that is deserving of official recognition.
 

 (b) The article establishes a mechanism for the public expression and documentation of the commitment reflected by the domestic partnership, whose members either cannot or choose not to marry.
 

 (c) It is appropriate and fair that certain of the societal privileges and benefits now accorded to members of a marriage be extended to those who meet the qualifications of domestic partnership. The mechanism established by this article will facilitate the definition of those entitled to such privileges.
 

 8.Section 87-2 defines the following:
 

 Declaration of domestic partnership
 
 is a form provided by the clerk of council whereby two people agree to be jointly responsible for basic living expenses incurred during the domestic partnership, and recites that all the other requirements for domestic partnership are met.
 

 Domestic partners
 
 are two people who have chosen to share one another’s lives in an intimate and committed relationship of mutual caring, who live together and have signed a declaration of domestic partnership in which they have agreed to be jointly |7responsible for basic living expenses incurred during the domestic partnership, and have established their partnership under section 87-5(a).
 

 Live together
 
 means that two people share the same residence. It is not necessary that the right to possess the residence be in both names. Two people may live together even if one or both have an additional separate living residence. Domestic partners do not cease to live together if one leaves the shared living residence but intends to return.
 

 9. Chapter 87 further provides for how a domestic partnership may be established and registered; filing and recordkeeping requirements; and effect of termination of domestic partnerships on registry.
 

 10. Section 87-3 provides that neither that article nor the filing of a statement of domestic partnership shall create any legal rights or duties from one of the parties to the other greater than the legal rights and duties specifically created by that article or other ordinances or resolutions of the city council that specifically refer to domestic partnership. It also provides that once the partnership ends, the partners will incur no further obligations to each other.
 

 11. Section 87-5 requires the clerk of the City Council to administer and maintain the registry of domestic partnerships.
 

 12. Section 87-6 provides that, to become registered as domestic partners, neither person may be married, the two may not be related in any way that would bar marriage in Louisiana, and both must be at least 18 years old. Any different domestic partnership of which either previously was a member must have ended more than six months before the new declaration of domestic partnership was signed, unless the earlier partnership ended because of the death of one of its members.
 

 |¾13. Section 87-7 provides that individuals may register as domestic partners by requesting a form provided by the clerk of the City Council, and returning the completed, signed, and notarized form with a fee to the clerk.
 

 14. At least 132 persons registered as domestic partners between 1997 and Au
 
 *152
 
 gust 12, 2003, the date of the defendants’ response to plaintiffs’ first set of interrogatories.
 

 15. On May 23, 1997, the City’s Chief Administrative Officer issued Circular Memorandum No. 24-97, stating its purpose to announce that domestic partner coverage would be available under the City’s health care program, effective July 1,1997.
 

 16. Circular Memorandum No. 24-97 announced utilization of the domestic partners registry in the administration of benefits under the health care program, and provided guidance for City employees to enroll domestic partners and them eligible dependents in the program.
 

 17. Prior to July 1, 1997, coverage under the City’s health care program was available only to legally married spouses.
 

 18. As of August 2003, approximately ten City employees had registered domestic partners who were receiving health insurance benefits.
 

 19. While, as of August 2003, the monthly cost to the City for domestic partners’ health insurance was $203.76 per person, the City, in its Answers to Interrogatories, indicated that the total cost of all benefits provided by the City to domestic partners since 1997 was not readily accessible.
 

 |n20. The City’s contribution to its health care plan is paid out of the City’s General Fund Operating Budget, and the sources of revenue for the general fund includes non-dedicated taxes, including sales, use and property taxes, fees, fines and service charges.
 

 The plaintiffs contend that the trial court erroneously failed to acknowledge that no law authorized the creation and maintenance of the City’s domestic partnership ordinance scheme. The trial court relied on La. Const. Art. VI, § 4, which provides in pertinent part:
 

 Every home rule charter ... existing or adopted when this constitution is adopted
 
 [5]
 
 shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter ... shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local government subdivisions.
 

 Thus, as the trial court correctly noted, as a pre-1974 Home Rule Charter municipality, the City is permitted to pass any ordinance so long as it is not violative of the Louisiana Constitution. See
 
 City of New Orleans v. Board of Comm’rs of the Orleans Levee Dist.,
 
 93-0690, p. 7 (La.7/5/94), 640 So.2d 237, 243-44. The Supreme Court’s opinion in that case provides a learned survey of the history of the Home Rule movement, with particular reference to the legislative history of Article VI, § 4 of the Louisiana Constitution of 1974. We are guided by the following analysis from that case:
 

 |inLocal governmental autonomy or home rule is not a self-sufficient or absolute virtue. In actuality, it may exist only to the extent that the state constitution endows a local governmental entity with two interactive powers, viz., the power to initiate local legislation and the power of immunity from control by the state legislature. In other words, these powers, initiation and immunity, are the yin and
 
 *153
 
 yang that combine to produce all of the autonomy that a home rule local government may come to have. By the period of January 1973 through April 1974, when the present Louisiana Constitution and its Local Government Article were drafted, debated and ratified, these concepts and theft history were well known to home rule scholars and advocates.
 

 The first power, initiation, refers to a local government’s ability to initiate legislation and regulation in the absence of express state legislative authorization .... The power of immunity, on the other hand, is essentially the power of localities to act without fear of the supervisory authority of the state government. Immunity exists to the extent that the local entity is insulated from state legislative control. [Citations omitted.]
 

 City of New Orleans,
 
 93-0690 at pp. 4-6, 640 So.2d at 242.
 

 The history of efforts at providing for home rule reflected undue concessions to acts of the legislature that tended to deprive local governments of authentic home rule.
 

 Consequently, the drafters and ratifiers of the 1974 Louisiana Constitution adopted more stringent forms of home rule safeguards. These provisions grant broad powers of immunity from control by the state legislature to two classes of home rule governments when they are exercising theft legislative powers as authorized by the constitution, viz., (1) to preexisting home rule municipalities [such as the City] and parishes when exercising within theft boundaries any legislative powers not in conflict with the 1974 state constitution.... In recent years, growing numbers of home rule exponents have come to realize that such provisions are necessary to guarantee any substantial degree of genuine local autonomy. [Citations omitted.]
 

 In
 
 City of New Orleans,
 
 93-0690 at p. 7, 640 So.2d at 243.
 

 The question before us is whether the City’s Home Rule Charter grants it the right to initiate the legislation in question. As noted in the foregoing opinion:
 

 There are three primary, interrelated sources of the [City’s] power to initiate legislation and regulation: Article VI, § 4 of the 1974 state constitution; the preexisting city home rule charter; and any amendments to the charter, subsequent to the adoption of the constitution, made pursuant to methods provided by the charter. Article VI, § 4 constitutionally maintains the preexisting [City] charter in effect, including the powers, functions, and duties provided for by that charter, except as inconsistent with the 1974 constitution. Section 4 further provides that subsequent to the adoption of the 1974 constitution the [City] charter may be amended, modified, or repealed pursuant to the methods set forth in the charter. In effect, Section 4 constitutionalizes the [City] charter, as amended by the local electorate according to methods provided by the charter, except insofar as the governmental powers, functions, and duties provided by the charter are inconsistent with provisions of the 1974 constitution.
 

 [[Image here]]
 

 The nature or content of the [City’s] power to initiate legislation is determined by the provisions of the preexisting charter maintained in effect by the 1974 state constitution and amendments thereto, if any, adopted pursuant to the charter. Article II, sec-
 

 
 *154
 
 tion 2-101 of the [City] home rule charter of 1954, which was in existence when the 1974 Louisiana Constitution was adopted, contains a declaration of the municipality’s home rule powers ...
 

 In essence, Section 2-101 of the charter stakes a continuing claim, without self-imposed limits, to the utmost powers of initiation available to the city under the constitution.... In sum, therefore, the [City] home rule charter asserts, and Article VI, § 4 of the constitution authorizes the city to exercise, any legislative power within its boundaries that is not inconsistent with the 1974 constitution.
 

 Id.,
 
 93-0690 at p. 7, 640 So.2d at 244-45.
 

 | ,aThe plaintiffs contend that since, to use their language, “there was no such thing as a ‘Domestic Partner’ until the City created it,” its creation of this “civil entity” violated La. Const. Art. VI, § 9. Clearly, if the domestic partner registry ordinance violated that provision of the Louisiana Constitution, the ordinance would not enjoy the protection of Art. VI, § 4. However, it is clear from the legislative history of the ordinance that it did not create the concept of domestic partnership, and was intended merely to acknowledge the previous and continuing existence of these arrangements, not to give them any particular legal status by setting forth a set of legal rights and obligations that would flow from the already existing relationships.
 

 The plaintiffs contend that the trial court erroneously found that the City’s domestic partnership ordinance does not govern private or civil relationships in violation of La. Const. Art. VI, § 9. The plaintiffs cite the definition of “govern” found in Merriam-Webster’s Collegiate Dictionary, 11th Edition, “to control and direct the making and administration of policy in.” The ordinance does not control the making and administration of domestic partnerships; it merely provides a mechanism whereby persons may register these partnerships in the City. The plaintiffs also cite the definition found in Encarta World Dictionary, “to control, regulate or direct something; to be responsible officially for directing the affairs, policies, and economy of [an entity]; to have or exercise an influence over something.” While this broad definition would clearly contemplate lesser relationships than those contemplated by the constitutional prohibition, particularly 11sin the area of “exercising influence over”, we do not find that the registry ordinance controls, regulates or directs domestic partnerships. Again, it provides only a means for registering certain domestic partnerships that fit its parameters. Private contracts that might form domestic partnerships are not controlled, regulated or directed by the ordinance. The terms and legal effect of these and all other contracts are regulated only by the applicable general laws of the state, city and nation. The defendants cite Webster’s College Dictionary (Random House 1997), which defines “govern” as “to rule by right or authority” or “to exercise a directing or restraining influence over, guide.” It would stretch any of the proffered definitions
 
 [6]
 
 to find that the registry ordinance “governs” private, civil relationships.
 

 We find some guidance on the meaning of “govern” in this context from
 
 Hildebrand v. City of New Orleans,
 
 549 So.2d 1218, 1223-24 (La.1989). In that case, plaintiff claimed that City ordinances that imposed a tax on all inheritances, legacies, donations and gifts made in contemplation of death involving immovables and tangible
 
 *155
 
 movables physically situated in Orleans Parish violated Article VI, § 9. The Louisiana Supreme Court held that the ordinances did not interfere with the State’s right to govern private or civil relationships:
 

 The Legislature has enacted codes and statutes governing private and civil relationships in such areas as persons, property, obligations, successions, donations, matrimonial regimes, delictual responsibility, prescription, sales, leases, partnerships, corporations, mortgages, trusts, insurance, banking and many other | uareas. These laws include regulation of the transmission and receipt of property upon the death of the owner. The ordinances at issue do not attempt to govern any of the relationships established by the Legislature. Just as the ordinances do not infringe on the State’s exclusive right to regulate the law of descent or succession, they do not infringe on the State’s exclusive right to govern private and civil relationships. (Indeed, the grant to the State of the exclusive right to govern private and civil relationships is a cor-rollary [sic] to the grant of the State’s exclusive right to regulate (by general law only) the law of descent or succession, as well as the other rights specifically withheld from local regulation by La. Const, art. Ill, § 12.) The ordinances simply serve as a revenue-raising measure imposed on the transmission and receipt of an estate. While the value of the inheritance is affected, the right to regulate the private and civil relationships between the owner of the property and his heirs or legatees is not.
 

 Hildebrand,
 
 549 So.2d at 1228-24.
 

 In the instant case, the right to regulate the private and civil relationships between the domestic partners who may choose to avail themselves of the registry provided for by the ordinance is not affected by the ordinance.
 

 In Reasons for Judgment, the trial court found that, as the ordinance explicitly states, it simply “establishes a mechanism for the public expression and documentation of the commitment reflected by the domestic partnership,” citing Section 87-1(b) of the City Code. In reviewing the trial court’s conclusion, we are guided by the Louisiana Supreme Court’s directive in
 
 Francis v. Morial,
 
 455 So.2d 1168, 1173 (La.1984):
 

 It is therefore self-evident that Article VI of the 1974 Louisiana constitution strikes a different balance of power between the state legislature and home rule governments than that which existed under previous constitutions. Home rule entities must be regarded as more than creatures of the legislature, since their powers and functions are granted directly by the constitution and ||.-their discretion of deployment is constitutionally preserved against undue interference. Kean,
 
 supra
 
 at 66; Murchison,
 
 supra
 
 41 La.L.Rev. 488, at 487-88. Home rule abilities and immunities are bestowed by the constitution in terms too full and general to warrant narrow construction of them by the courts. Kean, supra at 66. The framers also regarded the principles which courts have developed in accommodating individual rights with the state’s exercise of its police power as analogously applicable to the resolution of conflicts between police measures and the new constitutionally protected rights of home rule governments. E.g., VII Records 1446 (statement of Delegate Avant). This transformation in the constitutional philosophy of local gov
 
 *156
 
 ernment calls for a corresponding adjustment in the judicial attitude toward home rule prerogatives. VII Records 1363-71;
 
 City of New Orleans v. State,
 
 426 So.2d 1318, 1322 (La.1983) (concurring opinion);
 
 City of Shreveport v. Kaufman,
 
 353 So.2d 995 (La.1977); Kean,
 
 supra;
 
 Murchison,
 
 supra.
 
 Hence, it is appropriate that home rule powers, functions and immunities should be construed fairly, genuinely and reasonably and any claimed exception to them should be given careful scrutiny by the courts. VII Records 1415-16. [Emphasis added.]
 

 Applying this careful scrutiny, we cannot say that the trial court’s conclusion is manifestly erroneous, clearly wrong, or contrary to law. The core issue is whether or not the creation of the registry “governs” private or civil relationships. While it may be argued that the registry ordinance recognizes the
 
 de facto
 
 existence of such relationships, careful scrutiny does not disclose clear evidence of “governance.” The domestic partnership registry does not regulate the creation, maintenance or termination of the partnerships, but provides rules pursuant to which the partnerships may be registered. Applying the strict interpretation mandated by the Louisiana Supreme Court, we cannot say that the registry ordinance rules domestic partnerships by right or authority, exercises a directing or restraining influence over the partnerships, or guides them. Registry is voluntary |1(iand confers no legal rights and obligations. The testimony adduced in connection with the consideration of the ordinance indicates that it was intended to be an “acknowledgement of the respect” to which domestic partners as a community are entitled
 
 [7]
 
 , and an “acknowl-edgement of a situation that has existed for many years.
 
 [8]
 
 ” Since the registry ordinance itself confers no special status, legal benefits or legal responsibilities to the registrants, we find an absence of indicia of governance.
 

 Justice Weimer’s concurrence, in which Chief Justice Calogero joined, in
 
 New Orleans Campaign for a Living Wage v. City of New Orleans,
 
 02-0991, p. 5, (La.9/4/02), 825 So.2d 1098, 1113, noted that Article VI, § 9 is intended as a legislative recognition of the fact that laws governing relationships between private entities are more properly the subject of statewide legislation that would produce a desired uniformity of treatment of such interests than municipal legislation that could result in an endless variety of private law. The concurrence also referred to the chaos that could ensue should each parish or town entitled to exercise home rule powers be thereby empowered to adjust contract, property and a host of other legal relationships. Clearly, that is neither the intent nor the effect of the registry ordinance.
 

 The intervenors suggest that the plaintiffs’ reading of Article VI, § 9 would make several other City ordinances vulnerable to constitutional attack. Among these ordinances are 54-483, prohibiting eviction without due process; 54-491.1, | ^prohibiting French Quarter rentals of real property for less than a term of thirty days; 86-22
 
 et seq.
 
 and 86-33
 
 et seq.
 
 prohibiting employment and public accommodations discrimination against certain protected categories of persons; 54-525 providing protections for victims of domestic violence; and 30-1486 regulating the relationship between tour guides and them customers. Like the registry ordinance, while these ordinances may in
 
 *157
 
 some manner affect the private, civil relationships of landlords and tenants, of employers and employees, of merchants and their customers and of persons in domestic relationships, they cannot be said to “govern” those relationships within the meaning of the
 
 Hildebrand
 
 opinion. The intervenor also points out that the City maintains other registries documenting civil relationships and status without presuming to “govern” those issues. Among those registries are registries of disadvantaged small businesses (Ordinance 46-36), private clubs and carnival krewes (Ordinance 86-35).
 

 We are not persuaded by the plaintiffs’ argument that the registry ordinance would confuse the marital status, rights and benefits accruing to married persons “as they drive from Lafayette” to New Orleans. The registry ordinance has no effect on the Civil Code articles relating to marriage, creates no obligations between the parties who choose to register, and provides neither an enforcement mechanism nor a cause of action for which redress may be sought in the courts of this state.
 

 | ^Likewise, we find that the plaintiffs’ reliance on the Massachusetts court’s opinion in
 
 Connors v. City of Boston,
 
 430 Mass. 31, 714 N.E.2d 335 (1999)
 
 [9]
 
 is misplaced. In that case, the court rejected an executive order issued by the Boston mayor extending group health insurance benefits to domestic partners of city employees. The court correctly noted that adjustments in the coverage of the city’s health insurance policies were matters for the legislative body, not for the executive. In the case at bar, the City Council, the City’s legislative body, and not the executive branch of government, provided by ordinance for the extension of benefits to employees’ registered domestic partners. Thus, the
 
 Connors
 
 case gives support to the trial court’s conclusion that the City Council’s ordinance extending health insurance benefits to employees’ registered domestic partners is valid.
 

 The trial court also noted that La.R.S. 33:3062 provides that the City may contract for any type of insurance protection for itself or its officers and employees, provided the term of such coverage does not exceed ten years. In this manner, the provision of health benefits by the City is “provided by law” within the meaning of La. Const. Art. VI, § 9. The statute refers to benefits provided to
 
 employees,
 
 and does not address, limit or define who might be considered to be covered dependents of those employees. Public policy favors provision of insurance in order to limit the state’s exposure to provide public welfare benefits to uninsured persons. The defendants have noted that the courts of Colorado, Florida, Illinois, Maryland and New York have upheld provision of benefits to domestic ^partners absent contrary positive law. We note that earlier cases from Virginia and Minnesota reached contrary results; however, there is no indication that the local authorities in those cases operated under home rule charters.
 

 The plaintiffs contend that the trial court erroneously found that the domestic partnership ordinance scheme does not violate the provisions of La. Const. Ait. XII, § 15, the Defense of Marriage Act. That section provides:
 

 Marriage in the state of Louisiana shall consist only of the union of one man and one woman. No official or court of the state of Louisiana shall construe this constitution or any state
 
 *158
 
 law to require that marriage or the legal incidents thereof be conferred upon any member of a union other than the union of one man and one woman. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognize. No official or court of the state of Louisiana shall recognize any marriage contracted in any other jurisdiction which is not the union of one man and one woman. [Emphasis added.]
 

 This provision was added by Acts 2004, No. 926, § 1, approved September 18, 2004, and effective October 19, 2004.
 
 [10]
 
 The plaintiffs’ Motion for Summary Judgment does not refer to the Defense of Marriage amendment, nor have they amended their petition to state a claim thereunder. The amendment is raised only in plaintiffs’ opposition to the defendants’ Motion for Summary Judgment.
 

 The pleadings allowed in civil actions are petitions, exceptions, written motions and answers. LSA-C.C.P. art. 852. Therefore, when the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition (the original petition, |20an amended and supplemental petition or a petition in an incidental demand), an exception, a motion or an answer. It cannot be raised in a memorandum, opposition or brief as those documents do not constitute pleadings.
 
 Roudakis v. City of Ruston,
 
 40,952, p. 3 (La. App. 2 Cir. 4/19/06), 927 So.2d 1231, 1233.
 

 Since this claim of unconstitutionality was not raised by petition, answer, or exception, it was not before the trial court. Furthermore, it does not appear from the record on appeal that this claim was served on the Attorney General as required by La.C.Civ.Proc. art. 1880. Therefore, it is not before this Court.
 
 [11]
 

 For the foregoing reasons, having found no error below, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 [1]
 

 . Intervenors/Defendants Brian Barbieri and Howard Lees filed memoranda in support of the defendants’ Motion for Summary Judgment. The named intervenors were substituted for the Lambda Legal Defense and Education Fund as intervenors in this matter.
 

 [2]
 

 . This quotation is taken from comments quoted in the plaintiffs' Memorandum in Support of Motion for Summary Judgment. The source of the words marked in brackets [ ] is not stated in the record.
 

 [3]
 

 . The attachments to the plaintiffs’ motion for summary judgment indicate that the ordinance passed unanimously, with seven votes, Council members Giarrusso, Taylor, Wilson, Singleton, Clarkson, Boissiere, Jr. and Jackson, Jr. “For” and none "Against”.
 

 [4]
 

 .The attachments to the plaintiffs’ motion for summary judgment refer to the minutes of the City Council Meeting held on June 17, 1999, and refer to the ordinance by its calendar number, 22,565. The roll call for the ordinance was, For: Council members Sapir, Singleton, Carter, Glapion, Hazeur-Distance, and Thomas; Against: Council member Terrell.
 

 [5]
 

 . The plaintiffs do not contest the fact that the New Orleans Home Rule Charter pre-dates the Louisiana Constitution of 1974. Thus, Article VI, § 4 applies to the City.
 

 [6]
 

 . Black's Law Dictionary, 8th Edition (2004), defines "govern” as "to control a point at issue.” This definition is inapposite to the issue drawn in this case.
 

 [7]
 

 . Comments, Mr. Lou Voltz.
 

 [8]
 

 . Comments, City Attorney Ronald Purcell.
 

 [9]
 

 . Distinguished,
 
 Lowe v. Broward County,
 
 766 So.2d 1199 (Fla.App. 4 Dist.2000);
 
 Tyma v. Montgomery County,
 
 369 Md. 497, 801 A.2d 148 (2002).
 

 [10]
 

 . While this section of the Constitution survived a pre-election attack on its constitutionality in
 
 Forum for Equality PAC v. McKeithen,
 
 04-2477, 04-2523 (La. 1/19/05), 893 So.2d 715, no Louisiana court has rendered an opinion on its constitutionality since its enactment. The constitutionality,
 
 vel non,
 
 of La. Const. Art. XII, § 15 is not before this Court on this appeal. We also note that the provision became effective after plaintiffs filed their petition, and that the plaintiffs have not amended their petition to include a claim that the ordinance violates the new constitutional provision.
 

 [11]
 

 . The plaintiffs contend in brief that the State of Louisiana has a strong public policy favoring marriage over other methods of cohabitation; however, they did not assign this argument as error, nor have they provided record evidence of such a policy. While La. Const, art. XII, § 15 defines marriage, it does not speak to a preference; it merely provides that the incidents of marriage are to flow only from marriage as it is defined in that section.